# STATE OF MICHIGAN

# COURT OF APPEALS

In re TAYLOR, Minors.

UNPUBLISHED
August 20, 2015

No. 324429
Oakland Circuit Court
Family Division
LC No. 13-813881-NA

In re TAYLOR, Minors.

No. 324430
Oakland Circuit Court
Family Division
LC No. 13-813881-NA

Before: OWENS, P.J., and SAAD and GADOLA, JJ.

PER CURIAM.

In these consolidated appeals, respondents appeal as of right from the trial court's order terminating their parental rights. In Docket No. 324429, respondent-mother appeals the termination of her parental rights to her two minor children, YT and NT, under MCL 712A.19b(3)(g), (j), and (k)(*iii*).[1] In Docket No. 324430, respondent-father appeals the termination of his parental rights to his minor child, NT, pursuant to the same statutory provisions. We affirm.

## I. BACKGROUND

In October 2013, petitioner filed an initial petition asking the court to take jurisdiction over NT and to terminate respondent-mother's parental rights to the child. The petition alleged that NT was in imminent risk of harm because NT's sister, GT, died while in respondents' care

---

[1] Although petitioner sought termination under MCL 712A.19b(3)(g), (j), and (k)(*iii*) with regard to both respondents, it is unclear to what extent the trial court relied on § 19b(3)(k)(*iii*) in terminating respondents' parental rights. In its opinion, the court mentions § 19b(3)(k)(*iii*), but it does not make any specific factual findings with respect to this statutory provision. Also, the conclusion of the opinion states only that clear and convincing evidence supported termination of respondents' parental rights under MCL 712A.19b(3)(g) and (j).

less than nine months before NT's birth. According to the petition, GT died of bronchial pneumonia and significant malnourishment. At the time the petition was filed, respondent-mother was incarcerated on charges of child abuse stemming from the death of GT. The petition also indicated that respondent-mother had another child, YT, who was approximately two and a half years old, but he had not been in respondent-mother's care in over a year and his whereabouts were unknown.[2]

In November 2013, petitioner filed a petition asking the court to take jurisdiction over YT and to terminate respondent-mother's parental rights to the child. The petition alleged that respondent-mother received no prenatal care while pregnant with YT, and YT had never received any medical care. According to the petition, on November 18, 2013, the authorities located YT residing in a shed with no running water, no bathroom, and no electricity. At the time, YT was in the care of respondent-mother's mother, who had previously had her parental rights terminated to other children, and respondent-mother's stepfather, who was believed to be the father of YT.

Thereafter, petitioner filed a combined petition regarding both YT and NT. The petition named respondent-father as the legal father of NT, and named respondent-mother's stepfather as the putative father of YT. The petition reiterated the previous allegations against respondent-mother, and further noted that respondent-father had four other biological children in California whom he did not care for or support. It also indicated that respondent-father was caring for GT when she died as a result of malnutrition and pneumonia in 2013. The petition sought termination of respondents' parental rights under MCL 712A.19b(3)(j).

In May 2014, respondents pleaded no contest to the allegations in the petition, and the court took jurisdiction over the matter. In September 2014, the court authorized a second amended petition for termination of parental rights with respect to both respondents. The petition alleged that termination was appropriate under MCL 712A.19b(3)(g), (j), and (k)(*iii*). Following hearings on the statutory termination grounds and the children's best interests, the court issued an opinion and order terminating respondent-mother's rights to YT and NT, and terminating respondent-father's parental rights to NT.

## II. STATUTORY BASIS

To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination set forth in MCL 712A.19b(3) has been met by clear and convincing evidence. *In re Sours*, 459 Mich 624, 632-633; 593 NW2d 520 (1999). We review for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination. MCR 3.977(K); *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). A finding is clearly erroneous if this Court is definitely and firmly convinced on review of the whole record that the trial court made a mistake. *Mason*, 486 Mich at 152. If clear and convincing evidence supports termination under any of the statutory grounds cited by the trial

---

[2] Immediately after GT's death, the trial court entered an order taking temporary protective custody of YT, but the authorities were unable to locate the child. NT was not yet born at the time of GT's death.

court, erroneous reference to a separate statutory provision constitutes harmless error. *In re Williams*, 286 Mich App 253, 273; 779 NW2d 286 (2009).

Below, the trial court found that termination of both respondents' parental rights was warranted under MCL 712A.19b(3)(g), (j), and (k)(*iii*). Those statutory provisions state the following:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

> * * *

> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

> * * *

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

> * * *

> (k) The parent abused the child or a sibling of the child and the abuse included 1 or more of the following:

> * * *

> (*iii*) Battering, torture, or other severe physical abuse.

## A. RESPONDENT-MOTHER

Respondent-mother argues that the trial court clearly erred in finding that termination of her parental rights was supported by clear and convincing evidence. We disagree. The trial court record is replete with evidence that respondent-mother was not a suitable caregiver for her children. Respondent-mother's parenting skills and child development knowledge were so limited that she only fed GT almond milk after GT allegedly refused to nurse. Respondent-mother did not seek medical care for GT after her birth, even when the infant began losing weight. Later, when GT stopped breathing, respondent-mother failed to call for emergency medical help. She also refused to have her children immunized and declined recommended antibiotics before GT's delivery despite testing positive for Strep B. Ultimately, respondent-mother's mistrust of modern medicine and lack of parenting skills resulted in GT's death.

Contrary to respondent-mother's contentions on appeal, "anticipatory neglect can militate in favor of termination." *In re LaFrance*, 306 Mich App 713, 730; 858 NW2d 143 (2014). Respondent-mother's inability to care for GT was relevant to her ability to provide care and custody for YT and NT, and relevant to whether these children would be harmed in her care.

Moreover, the trial court did not simply speculate that YT and NT might come into harm, but rather based its findings on evidence of respondent-mother's actual conduct and limitations.

For instance, respondent-mother failed to protect YT from her mother and stepfather, despite the fact that she was abused and neglected by them. When petitioner filed the first petition with respect to NT, respondent-mother had not cared for YT in over a year and did not know his whereabouts. When the authorities later located the child, YT was in the care of respondent-mother's mother and stepfather, and was residing in a shed with no running water, no toilet facilities, and no electricity. Respondent-mother argues that she was denied the opportunity to parent YT because she was a minor when he was born. However, her claim is unpersuasive given the fact that she failed to assist the authorities in locating YT or even in reporting his abduction when her mother first took him.

Contrary to respondent-mother's claim that she is a fit and capable parent, her psychological evaluation showed that she denies responsibility for GT's death, which is a maladaptive coping mechanism. Testimony at the termination hearing revealed that respondent-mother would need extensive therapy and parenting skills education before she could properly care for her children; however, respondent-mother's mistrust of the system would make therapeutic alliance difficult. Therefore, it was unlikely respondent-mother would achieve parental fitness in the near future.

Finally, respondent-mother did not have stable housing or income. During the three years before the termination hearing, respondent-mother lived in five houses and never provided proof of a reliable source of income. Respondent-mother presented no evidence that she could support herself or her children. Under these circumstances, the trial court did not err in concluding that respondent-mother lacked the capacity to provide proper care and custody for NT and YT, and that there was a reasonable likelihood that the children would be harmed if returned to her care. See MCL 712A.19b(3)(g) and (j).

Respondent-mother argues that the trial court erred in finding that clear and convincing evidence established MCL 712A.19b(3)(k)(*iii*) because the court did not find that she seriously abused GT. It is unclear to what extent the trial court relied on MCL 712A.19b(3)(k)(*iii*) in terminating respondent-mother's parental rights to YT and NT. Therefore, we decline to address this topic further as any possible error regarding this statutory provision was rendered harmless when the court properly terminated respondent-mother's parental rights under MCL 712A.19b(3)(g) and (j). See *Williams*, 286 Mich App at 273.

B. RESPONDENT-FATHER

The trial court also properly terminated respondent-father's parental rights to NT under MCL 712A.19b(3)(g) and (j). Respondent-father's poor judgment was demonstrated throughout this case. Respondent-father has four other biological children whom he does not care for or support in any way. He was convicted of domestic violence in California for an incident that occurred in front of these children, and a warrant for his arrest was issued after respondent-father left the state in violation of his probation. Further, when respondent-father was 28 years old, he impregnated respondent-mother, who was a minor at the time.

GT was also respondent-father's child, and she died while in his care. Respondent-father failed to ensure that GT received medical treatment after her birth, he failed to recognize that she was severely undernourished, and he did not immediately call for emergency medical help when she stopped breathing. Rather, the record reveals that respondent-father was more concerned about the risk of being prosecuted for his conduct with respondent-mother and about his potential arrest on the outstanding warrant than the health and safety of his child.

Respondent-father has not demonstrated an ability to meet NT's basic physical needs. Respondent-father has not shown that he can maintain stable housing, and was living in a motel room in Michigan in 2013 before GT's death. The room did not have safe sleeping arrangements for an infant. Although respondent-father was employed at the time of the termination hearing, his income was not sufficient to support himself and his five children. Respondent-father has never acted responsibly toward any of his children, and the trial court did not err in finding this evidence was indicative of how respondent-father would care for NT. See *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001). Respondent-father argues that termination was premature because the trial court did not evaluate whether he could care for NT in the future. However, the trial court did evaluate respondent-father's future potential when it considered extensive evidence revealing respondent-father would require significant counseling and training before his parenting skills would be sufficient to care for a child.

Respondent-father argues that petitioner did not present evidence suggesting that he had ever harmed a child, so the trial court was only punishing him for past neglect. This argument is unpersuasive given the fact that respondent-father failed to provide proper medical care and nutrition for GT and his failure ultimately resulted in GT's death. Moreover, MCL 712A.19b(3)(j) requires a court to find only that there is a risk of harm to the child, not that the child was actually harmed, as respondent-father suggests.

Respondent-father also argues that the trial court made no findings under MCL 712A.19b(3)(k)(*iii*), likely because this statutory subsection addresses abuse and not neglect. Again, because it is unclear the extent to which the trial court relied on this statutory ground in terminating respondent-father's parental rights, and because sufficient evidence supported termination under MCL 712A.19b(3)(g) and (j), further comment on this statutory provision is unnecessary. See *Williams*, 286 Mich App at 273.

## III. BEST INTERESTS

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights . . . ." MCL 712A.19b(5). We review a trial court's determination regarding a child's best interests for clear error. *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). In assessing whether termination is in a child's best interests, the court should evaluate all evidence on the record and may consider factors including a parent's parenting ability, a child's need for stability, finality, and permanency, and the advantages of a foster home over the parent's home. *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012).

### A. RESPONDENT-MOTHER

The trial court did not clearly err in finding that termination of respondent-mother's parental rights was in the best interests of YT and NT. Respondent-mother was a teenager when she gave birth to her children and had been the subject of abuse and neglect herself. She never learned appropriate parenting skills and her survival skills were not enough to keep the children safe from harm. Although she argues that she was bonded to the children, any bond she may have had with them is not more important than their safety and stability.

Respondent-mother argues that she will be able to care for the children if she is given the chance. However, her claim is unsupported by the record. As the trial court properly found, respondent-mother would require extensive training and counseling to improve her parenting skills before she could be trusted with children. Both YT and NT had been in a stable home together for one year and both were bonded to their foster parents and foster siblings. There is potential that the children's foster care placement could become permanent. Respondent-mother has never experienced stability or permanency, and there is no evidence she can provide it for her children. Therefore, the trial court did not clearly err when it found that terminating respondent-mother's parental rights was in the children's best interests.

## B. RESPONDENT-FATHER

The trial court also correctly found that termination of respondent-father's parental rights was in NT's best interests. It is in a child's best interests to be raised by a caregiver who can meet her basic needs and keep her safe. Respondent-father has not demonstrated this ability. His two-month-old daughter died while in his care and her death was caused in part by medical neglect and malnutrition. Respondent-father has repeatedly shown that he is not a fit caregiver and lacks parental judgment. Respondent-father argues he has a bond with NT. But again, any bond respondent-father may have had with NT is not more important than her safety and stability.

Respondent-father argues that there was no evidence that he had a history of mental health problems, substance abuse issues, or involvement with Child Protective Services. This contention is likewise unpersuasive. Even without drug and mental health issues, respondent-father could not demonstrate appropriate parental judgment. And, although CPS may not have been involved with his family in California, the record is clear that respondent-father neglected his other children and even committed domestic violence in front of them. Respondent-father argues that he was employed and had suitable housing, but his income was not sufficient to support NT or his other children. Moreover, NT is in a stable placement and there is potential for her placement to become permanent. Accordingly, the trial court did not err in terminating respondent-father's parental rights.

Affirmed.

/s/ Donald S. Owens
/s/ Henry William Saad
/s/ Michael F. Gadola