# STATE OF MICHIGAN

# COURT OF APPEALS

In re J.D. BUTLER, Minor.

UNPUBLISHED
November 30, 2017

No. 337525
Macomb Circuit Court
Family Division
LC No. 2016-000369-NA

Before: METER, P.J., and BORRELLO and RIORDAN, JJ.

PER CURIAM.

Petitioner appeals by leave granted a February 16, 2017 dispositional order, which found that termination of respondent's parental rights was not in the best interests of the minor child, JB. For the reasons set forth in this opinion, we reverse and remand for entry of an order terminating respondent's parental right to the minor child.

## I. FACTS

Respondent previously had the rights to six minor children terminated based on physical abuse. Respondent first came to the attention of the court in 2012 when respondent's then two-year-old child, BN, suffered an unexplained fractured femur and a hematoma to her ear. Respondent's six children were removed from her care and then returned to respondent's custody in April 2013. Respondent relocated from Wayne County to Macomb County. In October 2013, a new petition was filed in Macomb County after BN was taken to the hospital with a severe subdural hematoma. Respondent offered different explanations for the injury, which required surgical intervention to prevent a fatality. Doctors agreed that the nature and severity of the injury was most likely the result of an intentional act of abuse that occurred up to seven days before BN was treated. During surgery, doctors discovered evidence that the child experienced a prior head trauma and observed other marks and scars indicative of past abuse. After the other children were removed from the home, it was discovered that several of them also had scars on their bodies consistent with abuse, and some of the children reported being "whooped" by

-1-

respondent with a belt and a hanger. The trial court terminated respondent's parental rights to the six children on July 18, 2014.[1]

Subsequently, respondent gave birth to JB on December 12, 2016, and the child was removed from respondent's care at birth because of her prior history with Children's Protective Services (CPS) and because she tested positive for opioids. Petitioner filed a permanent custody petition on December 14, 2016. The court held a bifurcated hearing in which jurisdiction was established when respondent entered a no-contest plea to MCL 712A.19b(3)(b)(*i*) and (i) and scheduled a dispositional hearing to address the child's best interests.

A best-interest hearing was held on January 26, 2017. Respondent's attorney indicated that parental rights were terminated in July 2014 to six other children. Petitioner requested the court to take judicial notice of the file from the prior proceedings.

In addition to evidence of the past abuse perpetrated on the other children, at the hearing, CPS worker Krystal Shaw recommended termination of parental rights because there was no indication respondent had changed her circumstances or improved her parenting or living situation. Respondent was provided a parent-agency agreement in Wayne County and the children were returned, but within a couple weeks of having the children returned one of the children sustained life-threatening injuries, and it was questionable whether respondent had inflicted those injuries. Shaw had not been provided documentation that respondent had participated in any type of mental health services. Respondent had not reported participating in any type of services or parenting classes. She never mentioned to Shaw that she needed or wanted a caregiver to help assist her with a disability. Shaw testified that respondent was involved in unhealthy relationships with fathers of the children and respondent was not able to provide stable housing.

Respondent visited with JB twice for two hours weekly. She missed two visits due to work conflicts but rescheduled them. Respondent was receiving Section 8 housing and food assistance. Respondent interacted well with JB. Her interactions were appropriate during visits. There appeared to be a bond. Shaw had not witnessed any negative interactions between respondent and JB. JB also appeared to have a bond with his foster parents.

Respondent had insight about her situation. She acknowledged that her relationship with the children's father was unhealthy and she was not receiving any help. She did not have family support and had many young kids. Respondent had insight about her past, poor relationships, and poor environment. She understood physical discipline was inappropriate. She was candid about her past. She expressed remorse and sorrow.

Shaw testified that respondent had not been as forthcoming about her prior criminal history, domestic violence, and mental health history as she thought. Respondent specifically

---

[1] This Court affirmed the prior termination order. *In re Norfleet/Winbush-Bey/Newton-Bey/Norfleet-Bey, Minors*, unpublished opinion per curiam of the Court of Appeals, issued May 12, 2015 (Docket Nos. 323110/323116).

said she was never in a relationship in which she was beaten. Shaw admitted that her agency could provide services to address issues faced by victims of domestic violence.

Respondent testified that she was not fully forthcoming about her mental health issues because she did not want to discuss it. Her depression varied from day to day. Sometimes she experienced it daily. Respondent did not want Shaw to take her son, which is why she did not talk about her parental rights being terminated after Shaw told her they found opiates in her system and her son's system. She had been prescribed Hydrocodone, which was a valid prescription, at the time JB was born. Respondent would not discipline JB because he was a baby. She learned that it was improper to handle a child physically.

Respondent was employed by a temp service doing home health care and other jobs. She also styled hair for money. Respondent testified that she had a bond with JB. She was capable of caring for him. She had grown to love herself more and learned how to maintain life and be a stable human being. At times it was difficult to care for all six kids at once. Today she had different coping skills. She had more help than before. She planned to be a single mother but had help from certain family members.

Respondent stated that she was willing to do another evaluation and follow through on whatever was recommended. She was waiting for a paper to come in the mail for Medicaid, and once approved she would be able to participate in therapy. She tried to get into parenting classes, but it was too costly for her and she could not find free classes. She looked into parenting classes towards the end of December after JB was born. Respondent had been diagnosed with depression. Respondent did not tell Shaw about her mental health problems because she did not want to talk about it. Respondent believed she only needed some help with parenting. She was never taught to be a parent so she could use new techniques. She was not taking any medication. Respondent was living in a three-bedroom house with friends who had two young children.

Respondent had not participated in any recent parenting skills classes, although she attempted to. She was a loving and caring mother who had changed significantly. She changed her environment and the people she spent time with. Respondent took full responsibility for everything that happened in her past. Respondent was capable of caring for JB's daily needs. She could handle one child.

On February 16, 2017, the court made its findings on the record. The court noted that respondent successfully completed a parent-agency agreement in Wayne County, and her children were returned prior to the case in Macomb. Respondent's parental rights were terminated due to severe abuse in Macomb County and the decision was affirmed by the Court of Appeals. JB was placed in a licensed foster home. He has been thriving in placement and respondent was exercising regular and appropriate visitation since the onset of the case. After respondent's parental rights were terminated in 2014 she had two miscarriages before JB was born. She had housing concerns and did not know the full names of the people with whom she resided. She had income instability and no mental health treatment. Respondent appeared to be working harder on having a subsequent child than on her need for stability with housing or on her mental status. JB's putative father had no interest in planning for the child.

The court found that respondent's statements that she would not judge the father given his substance abuse were indicative of poor judgment. Respondent did not have stability to care for JB and she presented with the same problems she had in Wayne County prior to termination of parental rights in Macomb County. The court found that respondent was not forthcoming with DHHS in discussing her situation when JB came to the attention of DHHS.

The court found that termination of respondent's parental rights was not in the child's best interests. The court noted that respondent completed services in Wayne County and had not been given a legitimate opportunity with referrals and services to work on her needs as to this child. Therefore, the court was going to continue the child as a temporary court ward and find that termination of parental rights was not in the child's best interests. The trial court ordered petitioner to file and serve a parent agency agreement on respondent. The court ordered respondent to follow all recommendations.

The court entered a written order on April 7, 2016 and subsequently denied petitioner's motion for reconsideration. This Court then granted petitioner's application for leave to appeal the trial court's order.[2]

## II. ANALYSIS

Petitioner argues that the trial court erred in finding that termination was not in JB's best interests. We agree.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). A trial court must also find by a preponderance of the evidence that termination is in the child's best interests before it can terminate parental rights. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court's findings of fact are reviewed for clear error. *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

On appeal, petitioner challenges only the sufficiency of the trial court's best-interest findings. Initially we note that respondent's argument regarding petitioner's failure to provide services is without merit; given that termination was the agency's goal at the outset, petitioner was not required to provide reunification services. See *In re HRC*, 286 Mich App at 463 (noting that DHHS is "not required to provide reunification services when termination of parental rights is the agency's goal.").

With respect to the court's findings regarding the best interests, the trial court noted that respondent had not addressed many of the issues that were a concern at the time her parental rights to six children were previously terminated. This Court previously found that BN was seriously injured after respondent received services, and given the evidence of past injuries to all

---

[2] *In re JD Butler Minor*, unpublished order of the Court of Appeals, entered June 14, 2017 (Docket No. 337525).

-4-

of the children, there was a reasonable likelihood that they would suffer from injury or abuse in the foreseeable future if returned to respondent's care. The trial court's record showed that many of respondent's children had scars and marks on their bodies consistent with abuse. Several of the children reported being "whooped" by respondent and respondent admitted to "popping" the children for discipline. One child suffered near fatal injuries. A parent's treatment of one child is probative of her proclivity to abuse other children. *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001). There is no indication that respondent is now differently situated than she was at the time her rights were previously terminated.

Although respondent claims she has changed and now has insight into her situation, the record shows otherwise. Respondent was not forthcoming with the CPS investigator about her CPS history or mental health issues. In her May 2014 psychological evaluation the child abuse scale was elevated indicating a propensity to child abuse due to mental health issues. Prior to the termination of respondent's parental rights in 2014, respondent's evaluating psychologist, Dr. Ryan, indicated that respondent would require at least two years of intensive therapy to address her issues. There is no indication that respondent has had two years of intensive therapy or addressed her issues. Although respondent claimed she was taking Bupropion to treat depression and help her stop smoking, the record shows that her Medicaid application was denied, and she did not produce any evidence that she had been receiving consistent psychiatric care or that she was emotionally stable. Given that respondent's mental stability was what put her at risk of abusing JB, it was necessary for respondent to provide evidence that her mental health issues were adequately addressed to keep JB safe from abuse. Moreover, JB was thriving in his foster home and he needed long-term stability that respondent could not provide. In short, there was clear evidence that termination of parental rights was in JB's best interests given respondent's history of physical abuse and propensity toward abuse caused by her mental health issues.

In addition, although respondent claims she can meet the needs of one child and was just overwhelmed by caring for six children, the evidence shows otherwise. Even without children in her care respondent has not been able to obtain or maintain stable housing. Her history of unhealthy relationships and domestic violence as recent as her involvement with JB's father suggests poor judgment, indicating she cannot take care of herself, let alone a child. Respondent's claim that she interacts appropriately with JB during visits and is bonded to him is not enough to demonstrate that she can care for him on her own and keep him safe. Additionally, the CPS case worker testified that termination was in JB's best interests. Given respondent's history, we are left with a "definite and firm conviction" that the trial court made a mistake when it held that it was not in the child's best interests to terminate respondent's parental rights. *In re Moss*, 301 Mich App at 80.

Reversed and remanded for entry of an order terminating respondent's parental rights. We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ Stephen L. Borrello
/s/ Michael J. Riordan