# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* C. L. RICH, Minor.

UNPUBLISHED
October 11, 2018

No. 342964
St. Clair Circuit Court
Family Division
LC No. 17-000183-NA

Before: JANSEN, P.J., and METER and STEPHENS, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to a minor child pursuant to MCL 712A.19b(3)(g) (failure to provide proper care or custody), (h) (imprisonment for such a period that the child will be deprived of a normal home for more than two years), and (j) (reasonable likelihood that child will be harmed if returned to the parent). We affirm.

At the time of the child's removal in May 2017, he was in the care of his mother, who was drug-addicted and without housing and income. Respondent had not yet established his legal paternity of the child. On June 15, 2017, the child's mother died as a result of her drug use. The trial court held a paternity hearing on October 26, 2017, and respondent, who was incarcerated for multiple drug-related offenses and for resisting arrest or assaulting a police officer, established paternity. Shortly thereafter, the Department of Health and Human Services (DHHS) filed for permanent custody of the child, and the court authorized a permanent custody petition against respondent. After a trial on January 31, 2018, the court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(g), (h), and (j), which provide:

> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.[1]

---

[1] MCL 712A.19b(3)(g) has been amended, effective June 12, 2018. See 2018 PA 58. The amended version of this statutory ground provides that a court may terminate parental rights to a

-1-

(h) The parent is imprisoned for such a period that the child will be deprived of a normal home for a period exceeding 2 years, and the parent has not provided for the child's proper care and custody, and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination set forth in MCL 712A.19b(3) has been established by clear and convincing evidence and that termination is in the best interests of the child. MCL 712A.19b(5); *In re Sours*, 459 Mich 624, 632; 593 NW2d 520 (1999). We review the court's decision for clear error. *Id*. at 633.

Termination of respondent's parental rights was proper under MCL 712A.19b(3)(g). At the time of the child's placement into protective care, respondent had not established paternity and had left the child in the care of his drug-addicted mother, who was without income or housing and who left the child without appropriate supervision. Respondent's lack of responsibility towards the child was made clear when he testified that he did not think he was responsible for the child coming into protective care because he was already incarcerated at the time of removal.[2] Respondent's failure to establish paternity until the child was almost five years old further demonstrated his lack of commitment to him. Respondent's contention that he did not become the legal father until after the case had started does not weigh in respondent's favor. Even when respondent, as a "mere putative father," did not yet have a legal duty to care for the child, as the biological father he had a moral duty to support him, or at a minimum, plan for his safety. *In re LE*, 278 Mich App 1, 23-24; 747 NW2d 883 (2008). Indeed, a respondent's conduct before perfecting paternity can provide a basis for termination of parental rights. *Id*. at 23. Here, respondent's lack of suitable housing and employment, engagement in criminality, and extensive drug activity before establishing paternity supported termination of his parental rights under MCL 712A.19b(3)(g).

Likewise, respondent's lack of awareness about the child's delays demonstrated that he was not a fit caregiver because it showed that he was not sufficiently attentive to the child.

---

child if it finds: "The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age."

[2] Evidence indicated that respondent, the child, and the child's mother used to live together, and three Child Protective Services referrals were made for the household during that time.

There is simply no indication that respondent was able to provide for the child or that he ever did. In addition, as the trial court properly noted, there is no reasonable expectation that respondent will have his substance abuse under control in a reasonable time because past attempts at rehabilitation had failed.[3] See MCL 712A.19b(3)(g).

Although we need not address the additional factors cited by the trial court because of the establishment of MCL 712A.19b(3)(g), we briefly discuss them for the sake of completeness. Termination of respondent's parental rights was appropriate under MCL 712A.19b(3)(h). Respondent will be incarcerated for over two years[4] and has not provided for the child's care and custody. Contrary to respondent's claim on appeal, there is no evidence that respondent made viable efforts to care for the child during the time when he would be incarcerated. In *In re Mason*, 486 Mich 142, 161; 782 NW2d 747 (2010), the Supreme Court noted the following in regard to MCL 712A.19b(3)(h):

> The combination of the first two criteria—that a parent's imprisonment deprives a child of a normal home for more than two years *and* the parent has not provided for proper care and custody—permits a parent to provide for a child's care and custody *although the parent is in prison*; he need not *personally* care for the child. The third necessary condition is forward-looking; it asks whether a parent "will be able to" provide proper care and custody within a reasonable time. Thus, a parent's past failure to provide care because of his incarceration also is not decisive.

Accordingly, a parent may fulfill the duty to provide proper care and custody by voluntarily granting custody of a child to a relative. *Id*. at 163-164. Here there is no evidence that respondent actually took prompt, appropriate action to arrange for custody of or guardianship over the child. The child was taken into protective care after being found in an unfit environment. Any suggestions respondent made, without additional actions on his part, were insufficient to provide for the child's proper care and custody and were insufficient evidence of a reasonable expectation that respondent would be able to provide for proper care and custody within a reasonable time. Although respondent argues that he has taken some classes while in prison, given his history of not being able to maintain a drug-free lifestyle when he is out of a structured setting, the classes he took in prison would not be enough to ensure his parental fitness

---

[3] While not making a separate argument about services or providing any legal authorities regarding services, respondent states: "DHHS has not been able to provide any services to . . . respondent." We note, however, that the agency's inability to provide services was due to respondent's incarceration; we further note that respondent *did* participate in a number of services offered in prison.

[4] Respondent's earliest out-date is February 2022. The trial court properly noted that any possibility of an earlier release date based on a "boot camp" was entirely speculative at this point. The court stated that "he's not eligible for parole before [February 2022] . . . as the facts are right now."

after his release from prison. Termination of parental right was proper under MCL 712A.19b(3)(h).[5]

Termination of parental rights was also proper under MCL 712A.19b(3)(j) because the child would be at risk of harm in respondent's care. Although respondent argues that he did not harm the child, this statutory section addresses risk of harm. Respondent admitted to his probation officer that he could not properly function without methamphetamines. His substance use and criminal lifestyle would put the child at risk of harm. Respondent's propensity toward criminality was so ingrained that he even got involved in new criminal activity while on probation. With respondent's lifestyle of drugs and crime, the child would likely have been exposed to harm. Thus, termination was proper under MCL 712A.19b(3)(j).

The trial court also did not err in its best-interests determination. MCL 712A.19b(5) ("If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and that additional efforts for reunification of the child with the parent not be made."). The record clearly showed that termination of parental rights was in the child's best interests. When the child was first placed in protective care he was acting out, demonstrating impulsivity, and had significant delays. After spending time in his foster home, where he was provided structure and his needs were met, he made significant progress so that therapeutic services were no longer needed and he was moved up to grade level. The child was thriving in the placement. Moreover, the child has not asked about respondent since the very beginning of the case, which demonstrated a lack of bond between the child and his father, despite respondent's claim to the contrary. It is in the child's best interests to continue in a structured, stable environment and to achieve permanence rather than to pursue a relationship with respondent, who has a poor track record. See, generally, *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012), and *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001) (discussing best interests). Thus, the trial court did not err in its best-interests determination.

Affirmed.

/s/ Kathleen Jansen
/s/ Patrick M. Meter
/s/ Cynthia Diane Stephens

---

[5] At any rate, because termination.