*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. B. SMITH, Minor.

UNPUBLISHED
May 21, 2019

No. 344252
Wayne Circuit Court
Family Division
LC Nos. 16-523212-NA

*In re* J. A. SMITH, Minor.

No. 344255
Wayne Circuit Court
Family Division
LC No. 16-523212-NA

Before: REDFORD, P.J., and MARKEY and K. F. KELLY, JJ.

PER CURIAM.

In Docket No. 344252, respondent father appeals as of right the trial court's order terminating his parental rights to his son, JBS, pursuant to MCL 712A.19b(3)(b)(*i*), (g), and (j). In Docket No. 344255, respondent mother appeals as of right the trial court's order terminating her parental rights to her daughter, JAS, pursuant to MCL 712A.19b(3)(g), (j), and (i). We affirm in each appeal, but remand with instructions for the trial court to duly segregate the "confidential" portions of the lower court files from the public file.[1]

---

[1] The record provided to this Court is in disarray, containing numerous unbound documents, orders, exhibits, and other materials, many of which are not in chronological order, and none are clearly segregated between public "legal" and confidential "social" files. Accordingly, we remand for the trial court to segregate the materials into public and confidential files to be maintained in accordance with MCR 3.925(D)(1) and (2), consistent with MCR 3.903(A)(3) (defining the contents of a "confidential file").

## I. BASIC FACTS

This case arises out of permanently disabling, nearly fatal brain injuries that JBS suffered in July 2016—before JAS was born—while the then-eight-month-old JBS was in respondent father's care. JBS was the result of a domestically violent relationship between the unmarried respondents. The evidence strongly suggested, and the trial court found, that JBS suffered his injuries when respondent father violently shook him.[2]

## II. FUNDS FOR AN EXPERT (BOTH APPEALS)

In both appeals, respondents argue that the trial court deprived them of due process by refusing to appoint an expert medical witness on their behalf at state expense. By failing to raise this due process argument below, respondents waived our consideration of it. See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) (holding that, as a general rule, "a failure to timely raise an issue waives review of that issue on appeal"). Even if we were to exercise our discretion to review this issue on appeal, see, e.g., *In re Medina*, 317 Mich App 219, 228; 894 NW2d 653 (2016), we would nevertheless find no error requiring reversal. The trial court did not deny respondents a process by which they could seek appointment of an expert at state expense. Rather, respondents refused to avail themselves of the process that *was* afforded, failing to file an appropriate motion before the chief judge as the trial court instructed. This procedural failure is attributable to respondents, not the trial court, and it is "settled that error requiring reversal may only be predicated on the trial court's actions and not upon alleged error to which the aggrieved party contributed by plan or negligence." See *In re Utrera*, 281 Mich App 1, 11; 761 NW2d 253 (2008) (quotation marks and citation omitted).

## III. DOCKET NO. 344252 (RESPONDENT MOTHER)

In Docket No. 344252, respondent mother raises two additional claims of error. First, she argues that the trial court clearly erred by deciding that it had been proven, by clear and convincing evidence, that termination of respondent mother's rights to JAS was warranted under several statutory grounds. We disagree.

We review for clear error the trial court's decision whether grounds for termination have been proven by clear and convincing evidence. *In re Medina*, 317 Mich App at 236. "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made," with the reviewing court "defer[ring] to the special ability of the trial court to judge the credibility of witnesses." *In re LaFrance*, 306 Mich App 713, 723; 858 NW2d 143 (2014).

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). "Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's

---

[2] Respondent father was acquitted of criminal child abuse charges arising out of the incident.

parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." *Id.*

The clear and convincing evidence standard is "the most demanding standard applied in civil cases[.]" *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995). Evidence is clear and convincing if it

> produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. [*Id.* (quotation marks, citation, and brackets omitted.]

"Evidence may be uncontroverted, and yet not be 'clear and convincing.' " *Id.* (quotation marks and citation omitted). "Conversely, evidence may be 'clear and convincing' despite the fact that it has been contradicted." *Id.* (quotation marks and citation omitted).

On this record, we cannot conclude that the trial court clearly erred by finding that Subsection (3)(j) had been established by clear and convincing evidence. On appeal, respondent mother argues that there was no proof that she would expose JAS to respondent father in the future. Respondent mother's argument ignores the fact that, for purposes of Subsection (3)(j), the harm in question need not be physical; a "risk of *emotional* harm" can suffice. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). Respondent mother also ignores the doctrine of "anticipatory neglect," which "recognizes that how a parent treats one child is certainly probative of how that parent may treat other children." *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001) (quotation marks, citation, and brackets omitted). Finally, respondent mother's argument ignores the fact that petitioner was not, under Subsection (3)(j), required to produce clear and convincing evidence that respondent mother would expose JAS to exactly the *same* harm to which JBS had been exposed, i.e., abuse at the hands of respondent father. Rather, petitioner was required to prove a reasonable likelihood, based on respondent mother's conduct or capacity, that JAS would be harmed if she were returned to respondent mother.

In light of the trial court's factual findings and credibility determinations, none of which we perceive as clearly erroneous, there was clear and convincing evidence to support the conclusion that respondent mother's conduct would put JAS at substantial risk or physical or emotional harm if JAS were returned to respondent mother. It is clear that respondent mother continued her sexual relationship with respondent father for weeks or months after she had reason to know that he had either badly injured JBS or neglected the child's care, permitting someone else to abuse him. And based on respondent mother's inconsistent testimony about when respondent father first admitted to her that he shook JBS—and when she ended her relationship with him—we are neither definitely nor firmly convinced that the trial court made a mistake when it found that respondent mother likely wished to rekindle her relationship with respondent father. Instead, we agree with the lawyer-guardian ad litem's observation below that respondent mother's testimony on such points was obviously untruthful. All of this evidence suggests that respondent mother has been willing to put her own interests— specifically, her desire to continue her violent sexual entanglement with respondent father—over the interests of her children, regardless of the potential repercussions. The doctrine of anticipatory neglect

suggests that respondent mother will continue to do so in the future. Thus, there is a very real risk that respondent mother might choose to expose JAS to respondent father or another man like him in the future, thereby exposing the child to the risk of physical abuse and resulting emotional harm.

Furthermore, as the trial court observed, in light of JBS's medical condition, and respondent mother's superior bond with him, it seems that she is far more focused on JBS and his recovery than on developing a bond with JAS, choosing to focus her time, attention, and limited financial resources on JBS. For those reasons, we conclude that the trial court did not clearly err by finding that Subsection (3)(j) had been proven by clear and convincing evidence. Having so decided, we need not decide whether other statutory grounds for termination were also established. *In re Ellis*, 294 Mich App at 32.

Respondent mother also argues that the trial court clearly erred by finding that it was in JAS's best interests for her parental rights to be terminated. We disagree.

We review the trial court's best-interest determination for clear error. See *In re Medina*, 317 Mich App at 236. MCL 712A.19b(5) provides, "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." As recently explained in *In re Medina*, 317 Mich App at 237:

> Although a reviewing court must remain cognizant that the fundamental liberty interest of natural parents in the care, custody, and management of their children does not evaporate simply because they have not been model parents or have lost temporary custody of their children to the State, at the best-interest stage, the child's interest in a normal family home is superior to any interest the parent has. Therefore, once a statutory ground for termination has been established by clear and convincing evidence, a preponderance of the evidence can establish that termination is in the best interests of the child. [Quotation marks, citations, and brackets omitted.]

"In making its best-interest determination, the trial court may consider the whole record, including evidence introduced by any party." *Id.* at 237 (quotation marks and citation omitted).

> [T]he court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014).]

Additionally, the court may consider the best-interest factors that are utilized when making child custody decisions in divorce actions, as enumerated at MCL 722.23. *In re Medina*, 317 Mich App at 238.

Notably, the children's LGAL supports respondent mother in her instant claim of error. Were this issue subject to review de novo, we might be inclined to rule differently. However, within the confines of the standard of review that actually applies here—the highly deferential[3] clear-error standard—we cannot justify such a ruling. In other words, on this record, we are not *definitely and firmly* convinced that the trial court made a mistake.

As the LGAL aptly notes in his brief on appeal, there was substantial evidence in this case suggesting that respondent mother was capable of being a loving, appropriate mother for both minor children. And termination would most likely sever not only JAS's developing bond to respondent mother, but also of any hope that JAS might one day develop a bond with her brother, JBS. In the context of child protective proceedings, however, such things are blades capable of cutting both ways. As this Court explained in *In re Medina*, 317 Mich App at 240:

> Respondent argues that "[k]nowing who one's biological father is and having a relationship with him have intrinsic value." In a utopian world, that might be true. But ours is an imperfect world, and the "value" a child derives from the parent-child relationship is not, as respondent suggests, universally positive; if it were, there would be little need for child protective proceedings.

In this case, while there is evidence that respondent mother is capable of being loving and appropriate during supervised visitations, there is also evidence suggesting that, at other times, she is capable of extreme selfishness, placing her own interests and desires above those of her children. In light of JAS's young age and her placement with her nonparty father, the trial court might well have been correct that the best course was to sever JAS's ties with respondent mother and JBS before they developed further, thereby minimizing the potential for serious emotional trauma in the future and allowing JAS to begin fully bonding with her father in a stable, permanent household. Additionally, under the doctrine of anticipatory neglect, we agree with the trial court that it is more likely than not that respondent mother's poor decisions regarding romantic partners will, unless redressed by treatment (or age and experience), tend to expose her children to abusive male figures in the future. Therefore, we conclude that the trial court's best-interest determination concerning JAS is not clearly erroneous.

Affirmed, but remanded to the trial court in keeping with the attached order sealing files so that the trial court may perform its legally required duty to segregate the "confidential" portions of the lower court files from the public file. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Jane E. Markey
/s/ Kirsten Frank Kelly

---

[3] See, e.g., *Home-Owners Ins Co v Andriacchi*, 320 Mich App 52, 79; 903 NW2d 197 (2017), ("we employ the deferential 'clearly erroneous' standard"); *People v McSwain*, 259 Mich App 654, 683; 676 NW2d 236 (2003) ("Overall, the clear error standard of review is highly deferential to the trial court").

# Court of Appeals, State of Michigan
## ORDER

In re J B Smith Minor; In re J A Smith Minor

Docket No.    344252; 344255

LC No.        16-523212-NA

James Robert Redford
Presiding Judge

Jane E. Markey

Kirsten Frank Kelly
Judges

On the Court's own motion and in accordance with the Court's opinion issued with this order, the Court orders that the Wayne Circuit Court Juvenile Division public case file in this matter be kept under seal by the circuit court until such time as the clerk of that court removes from the public file all confidential materials. The clerk of the circuit court is directed to place the confidential materials in a confidential social file separate from the public file. The clerk shall certify to this Court by letter to the clerk of this Court that the confidential materials have been removed from the public file. Once all of the confidential materials are removed from the public file, the clerk of the circuit court may unseal the public file without further order from the Court.

/s/ James Robert Redford

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

May 21, 2019
Date

Chief Clerk