*In re* AH

Docket No. 224385. Submitted December 5, 2000, at Lansing. Decided
March 13, 2001, at 9:10 A.M. Leave to appeal denied, 465 Mich ___.

The Family Independence Agency petitioned the Bay Circuit Court,
Family Division, to take jurisdiction over A.H., infant daughter of
respondent Jennifer Glass, and to terminate the parental rights of
the respondent to A.H. The petitioner alleged that the respondent's
parental rights to her other children previously had been termi-
nated voluntarily following the initiation of child protective pro-
ceedings, that since the birth of the child the respondent had been
arrested twice for domestic violence, that the respondent had left
the child in the care and custody of her cohabitant, Robert Huis-
kens, who had a history of substance abuse, arrests, and child
abuse or neglect, and that the respondent had a history of mental
illness and was not taking appropriate medication, thus placing the
child at risk. The court, Karen A. Tighe, J., placed the child in fos-
ter care and ultimately terminated the respondent's parental rights.
The court found that the conditions that led to the adjudication
continued to exist and there was no reasonable likelihood that the
conditions would be rectified within a reasonable time consider-
ing the age of the child, MCL 712A.19b(3)(c)(i), and that the
respondent, without regard to intent, failed to provide proper care
or custody for the child and there was no reasonable expectation
that the respondent would be able to provide proper care and cus-
tody within a reasonable time considering the age of the child, MCL
712A.19b(3)(g). The respondent appealed.

The Court of Appeals *held*:

1. MCL 722.638(1)(b)(ii)—pursuant to which the Family Indepen-
dence Agency is required to petition the family court to take juris-
diction over a child and to terminate the parental rights of a parent
of the child if the department determines that there is risk of harm
to the child and the parent's rights to another child were volunta-
rily terminated following the initiation of proceedings under MCL
712A.2(b)—does not violate the equal protection guarantees of the
federal and state constitution. The classification scheme created by
MCL 711.638(1)(b)(ii) to accord different treatment between par-
ents whose parental rights have been terminated and parents

whose parental rights have not been terminated has been precisely tailored to serve the compelling governmental interest of protecting children from unreasonable risks of harm.

2. A three-part test is used to evaluate a due process issue within the context of a parental rights termination proceeding. Under the test, courts must consider the private interest involved, the risk of error that the procedure creates, and the countervailing governmental interest. Application of the test to the facts of the this case leads to the conclusion that MCL 722.638(1)(b)(ii) does not violate the procedural due process guarantees of the federal and state constitutions.

3. The trial court did not clearly err in finding that the petitioner presented clear and convincing evidence of grounds for the termination of the respondent's parental rights under MCL 712A.19b(3)(c)(i) and MCL 712A.19b(3)(g).

4. The trial court, under the circumstances of this case, did not err in failing to conclude that terminating the respondent's parental rights was not in the best interests of the child.

Affirmed.

PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — PRIOR VOLUNTARY TERMINATION OF RIGHTS TO ANOTHER CHILD.

The statute that requires the Family Independence Agency to petition the family court to take jurisdiction over a child and to terminate the parental rights of a parent of the child if the department determines that there is risk of harm to the child and the parent's rights to another child were voluntarily terminated following the initiation of proceedings under MCL 712A.2(b) does not violate federal and state constitutional guarantees of equal protection and procedural due process (US Const, Am XIV; Const 1963, art 1, §§ 2, 17; MCL 722.638[1][b][ii]).

*Joseph K. Sheeran*, Prosecuting Attorney, and *Martha G. Mettee*, Assistant Prosecuting Attorney, for the petitioner.

*Charlotte L. Allen*, for the respondent.

Before: O'CONNELL, P.J., and ZAHRA and B. B. MACKENZIE*, JJ.

O'CONNELL, P.J. Respondent appeals as of right from an order terminating her parental rights to her daugh-

ter in accordance with MCL 712A.19b(3)(c)(i) and MCL 712A.19b(3)(g). The child's natural father voluntarily relinquished his parental rights, and he is not a party to this appeal. Respondent argues that the termination of her parental rights was contrary to the Due Process and Equal Protection Clauses of the United States and Michigan Constitutions, US Const, Am XIV; Const 1963, art 1, §§ 2, 17. She further contends that petitioner failed to present clear and convincing evidence to warrant the termination. We affirm.

Petitioner filed its petition concerning the child on June 22, 1998, alleging (1) that petitioner had filed three previous child protection petitions with respect to respondent's other children, (2) that since the birth of her most recent child on January 15, 1998, respondent had been arrested twice for domestic violence, (3) that she had left the child in the care and custody of her cohabitant, Robert Huiskens, who had a long history of substance abuse leading to several arrests and who had been listed twice as a perpetrator of abuse or neglect of a child, and (4) that respondent had a long history of mental illness and was not taking appropriate medication, which placed the child at risk of harm. Petitioner requested an order terminating respondent's parental rights.

Respondent first argues that we must reverse the lower court's order terminating her parental rights because the initial petition, authorized under the then existing version of MCL 722.638, 1997 PA 168, violated her due process and equal protection rights. The constitutionality of a statute is a question of law that we review de novo. *McDougall v Schanz*, 461 Mich 15, 24; 597 NW2d 148 (1999); *Citizens for Uniform Taxation*

*v Northport Public School Dist*, 239 Mich App 284, 287; 608 NW2d 480 (2000).

The version of MCL 722.638, in effect at the time when petitioner filed the initial petition in this case, provided in pertinent part:

> (1) The department shall submit a petition for authorization by the court under [MCL 712A.2(b)], if 1 or more of the following apply:
>
> *          *          *
>
> (c) The parent's rights to another child were voluntarily terminated following the initiation of proceedings under [MCL 712A.2(b)], or a similar law of another state.
>
> (2) In a petition submitted as required by subsection (1), the family independence agency shall include a request for termination of parental rights at the initial dispositional hearing as authorized under [MCL 712A.19b]. [1997 PA 168.]

During the pendency of the proceedings below, our Legislature amended the above language to provide:

> (1) The department shall submit a petition for authorization by the court under [MCL 712A.2(b)], if 1 or more of the following apply:
>
> *          *          *
>
> (b) The department determines that there is risk of harm to the child and either of the following is true:
>
> *          *          *
>
> (ii) The parent's rights to another child were voluntarily terminated following the initiation of proceedings under [MCL 712A.2(b)], or a similar law of another state.
>
> (2) In a petition submitted as required by subsection (1), if a parent is a suspected perpetrator or is suspected of placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to

> eliminate that risk, the family independence agency shall include a request for termination of parental rights at the initial dispositional hearing as authorized under [MCL 712A.19b]. [1998 PA 428.]

For whatever reason, respondent does not challenge the statute as it existed at the time that petitioner commenced the present action. Rather, she attacks the current, amended version, which took effect shortly after the proceedings below commenced.

We note preliminarily that respondent's challenge to the amended statute raises the issue whether she has standing to do so in the first place. To have standing, a party must have an interest in the outcome of the litigation that will ensure the party's sincere and vigorous advocacy. *Kuhn v Secretary of State*, 228 Mich App 319, 333; 579 NW2d 101 (1998). "The plaintiff must also demonstrate that his substantial interest will be adversely affected in a manner distinct from the citizenry at large, i.e., an actual injury or likely chance of immediate injury different from the public." *Detroit Fire Fighters Ass'n v Detroit*, 449 Mich 629, 643; 537 NW2d 436 (1995). We conclude that respondent has standing to challenge the statute as amended. Her contention, that equal protection and due process prohibits the differential treatment of parents who have in the past voluntarily relinquished their rights to a child following the initiation of termination proceedings, relates to that language that the preamendment and postamendment statute have in common—namely that under certain circumstances petitioner lacks discretion regarding whether to request termination of the parent's rights. Consequently, respondent has an interest in the issue that ensures her sincere and vigorous advocacy.

We construe statutes as constitutional unless their unconstitutionality is clearly apparent. *Thompson v Auditor General*, 261 Mich 624, 646-647; 247 NW 360 (1933); *Stevenson v Reese*, 239 Mich App 513, 517; 609 NW2d 195 (2000). The party challenging the statute bears the burden of overcoming the presumption of constitutionality. *Id.* In making this determination, courts look to the provisions of the whole law, as well as its object and policy. *Frame v Nehls*, 452 Mich 171, 183; 550 NW2d 739 (1996), citing *Gomez v United States*, 490 US 858, 864; 109 S Ct 2237; 104 L Ed 2d 923 (1989).

The equal protection guarantee contained in both our federal and state constitutions requires that persons under similar circumstances be treated alike. *In re Hawley*, 238 Mich App 509, 511; 606 NW2d 50 (1999). However, it does not require that persons under different circumstances be treated the same. *Id.* The differential treatment at issue here is the requirement that under certain circumstances petitioner seek to terminate the rights of a parent who, after the initiation of termination proceedings, voluntarily relinquished her rights to a child. Respondent contends that the statute creates two classifications—those parents who have had parental rights terminated in the past, and those parents who have not—and treats them differently without justification. According to respondent, the first class receives differential treatment because MCL 722.638(2) states that under certain circumstances petitioner "shall" request the court to terminate parental rights with respect to any child born to a parent whose parental rights were terminated in the past.

Courts employ strict scrutiny of a legislative classification when the classification interferes with the exercise of a fundamental right. *Vargo v Sauer*, 457 Mich 49, 60; 576 NW2d 656 (1998), citing *Massachusetts Bd of Retirement v Murgia*, 427 US 307, 312; 96 S Ct 2562; 49 L Ed 2d 520 (1976). "A statute reviewed under this strict standard will be upheld only if the state demonstrates that its classification scheme has been precisely tailored to serve a compelling governmental interest." *Doe v Dep't of Social Services*, 439 Mich 650, 662; 487 NW2d 166 (1992). A parent's interest in the custody of her child and in the parent-child relationship is a fundamental right. *MLB v SLJ*, 519 US 102, 116-119; 117 S Ct 555; 136 L Ed 2d 473 (1996); *Stanley v Illinois*, 405 US 645, 651; 92 S Ct 1208; 31 L Ed 2d 551 (1972), citing *Skinner v Oklahoma*, 316 US 535, 541; 62 S Ct 1110; 86 L Ed 1655 (1942); *Reist v Bay Circuit Judge*, 396 Mich 326, 339-340; 241 NW2d 55 (1976) (plurality opinion); *Faler v Lenawee Co Sheriff*, 161 Mich App 222, 230; 409 NW2d 791 (1987).

The statute requires petitioner to determine both that "there is risk of harm to the child," and that the parent is "a suspected perpetrator or . . . suspected of placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk." MCL 722.638(1)(b) and (2) therefore addresses the protection of children who are at risk of harm and whose parent has voluntarily relinquished parental rights to another child as the result of previous child protective proceedings.

A straightforward reading of the statutory language clearly reveals that the Legislature's goal was the protection of children from unreasonable risks of harm. The statute therefore served a compelling state inter-

est. See *New York v Ferber*, 458 US 747, 756-757; 102 S Ct 3348; 73 L Ed 2d 1113 (1982); *State Fire Marshall v Lee*, 101 Mich App 829, 834; 300 NW2d 748 (1980). We further conclude that the statute is "precisely tailored" to serve this interest. The doctrine of anticipatory neglect recognizes that "[h]ow a parent treats one child is certainly probative of how that parent may treat other children." *In re LaFlure*, 48 Mich App 377, 392; 210 NW2d 482 (1973). See also *In re Dittrick Infant*, 80 Mich App 219, 222; 263 NW2d 37 (1977). In *In re Powers*, 208 Mich App 582, 592; 528 NW2d 799 (1995), this Court extended the doctrine of anticipatory neglect "to guarantee the protection of a child who is not yet born, i.e., because of the past conduct of another person, there is good reason to fear that the second child, when born, will also be neglected or abused." The current version of the statute requires petitioner to commence proceedings against parents who in the past have had their parental rights terminated, voluntarily or otherwise.[1] The Legislature therefore effectively codified the doctrine of anticipatory neglect and then added the additional element of a risk of harm to the child. To this extent, the challenged provisions target children whose parents have had their parental rights terminated in the past and who are at risk of harm. We doubt that the statute need have been any more carefully tailored to protect our state's interest in safeguarding its most

---

[1] MCL 722.638(1)(b)(i) also requires petitioner to commence action against a parent whose rights were terminated involuntarily. Further, under MCL 722.638(2), petitioner "shall" request termination where the child is at risk of harm and the parent is "a suspected perpetrator or . . . suspected of placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk."

vulnerable citizens. Therefore, while the statute does in effect create a separate class of parents, we do not conclude that it violates equal protection.

Nor do we conclude that MCL 722.638(1)(b)(ii) violates procedural due process. The United States Supreme Court has set forth a three-part test for evaluating a due process issue within the context of a parental rights termination proceeding. Under the test, courts must consider (1) the private interest involved, (2) the risk of error that the procedure creates, and (3) the countervailing governmental interest. We have already determined that respondent's interest involves a fundamental right and that the governmental interest in safeguarding children is compelling. Respondent argues that the requirement that petitioner request termination under the circumstances stated in the statute is not sufficiently flexible and creates a risk that a person's rights will be terminated erroneously. We reject this argument. After filing the petition, petitioner must still satisfy the statute's "risk of harm" requirement and establish that the parent is "a suspected perpetrator or . . . suspected of placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk." Further, a request for termination does not necessarily mean that the court will grant the request. As our Supreme Court discussed in *In re Trejo Minors*, 462 Mich 341, 356; 612 NW2d 407 (2000), the "best interests" provision of MCL 722.19b(5) allows the trial court to conclude that termination is clearly not in the child's best interest. We therefore conclude that, on balance, MCL 722.638(1)(b)(ii) does not violate procedural due process.

Respondent next argues that petitioner failed to present clear and convincing evidence to establish grounds for terminating her parental rights. We disagree. Our review of this issue is for clear error. *Trejo, supra* at 356-357.

The family court, in a detailed written opinion, found that petitioner had established that termination of respondent's parental rights was warranted under MCL 712A.19b(3)(c)(i):

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> *          *          *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (i) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the age of the child.

The court also determined that termination of respondent's parental rights was warranted under MCL 712A.19b(3)(g), which provides:

> The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the age of the child.

Regarding the court's determination under subsection 3(c)(i), we note that approximately one year passed between the court's initial disposition and the termination hearing. When the family court deter-

mined that it had jurisdiction over this case, respondent was living with Robert Huiskens. Respondent had been arrested twice since the child's birth for domestic violence and disorderly conduct. Huiskens also had a history of substance abuse and had several arrests. Following arguments with Huiskens, respondent herself repeatedly requested that child protective services remove the child from her home. At the first dispositional hearing, respondent was living with Huiskens while the child was in foster care. Respondent had not participated in any counseling, and she had missed four of the first five scheduled visitations with the child.

The court did not clearly err in finding that petitioner had proved that the conditions that led to the original adjudication continued to exist and that no reasonable probability existed that respondent would rectify them within a reasonable time, MCL 712A.19b(3)(c)(i). Respondent did not substantially comply with the parent/agency agreement. She did not demonstrate that she could provide adequate housing for the child and herself, she missed roughly half of her scheduled visits, she did not properly supervise the child, and she even requested that her visitation time be reduced. Respondent continued an abusive relationship with Huiskens at least until just before the termination proceedings began. Although she testified that she was employed and working at least forty hours a week, petitioner presented evidence that her employer dismissed her one month before, leaving her dependent on Huiskens for financial support. Finally, she did not undergo mental health counseling or substance abuse counseling even though petitioner had recommended such counseling.

Therefore, we agree with the trial court that no reasonable likelihood existed that respondent would rectify the conditions that led to the adjudication within a reasonable time, given the child's age. This evidence also supported a finding that, without regard to her intent, respondent failed to provide proper care and custody for the child, and no reasonable expectation existed that she would be able to do so within a reasonable time, MCL 712A.19b(3)(g).[2]

Respondent's final argument is that the trial court clearly erred in failing to conclude that terminating her parental rights was not in the best interest of the child. We disagree.

MCL 712A.19b(5) provides:

> If the court finds that there are grounds for termination of parental rights, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made, unless the court finds that termination of parental rights to the child is clearly not in the child's best interests.

This section

> provides the court the opportunity to find that termination is clearly not in the child's best interest[s]. The primary beneficiary is intended to be the child. Secondarily, the provision affords respondents additional protection by permitting the court to consider evidence, within the whole record, that termination is clearly not in a child's best interests. [*Trejo, supra* at 356.]

---

[2] In any event, we note that the undisputed facts of this case brought it squarely within MCL 712A.19b(3)(m), which provides that a court may terminate the rights of a parent whose "rights to another child were voluntarily terminated following the initiation of proceedings under section 2(b) of this chapter or a similar law of another state."

The record below supports the court's finding that respondent failed to provide proper care and custody for the child. Given respondent's history of mental health and substance abuse problems, her inability or unwillingness to participate in counseling during the year that this case was pending, and her continuing involvement in a violent relationship, we agree with the trial court that the facts of this case did not support a finding that terminating respondent's parental rights was clearly not in the child's best interests. The child was not yet two years old when respondent's parental rights were terminated. The evidence adduced below established that she was not attached to respondent and had thrived in foster care. The court found that she was "healthy, happy, and highly adoptable." Under these circumstances, the court did not err in determining that terminating respondent's parental rights was not adverse to the child's best interests.

Affirmed.