*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re CARCAMO/CASTILLO, Minors.

UNPUBLISHED
September 19, 2019

No. 345840
Oakland Circuit Court
Family Division
LC No. 2016-841892-NA

Before: O'BRIEN, P.J., and BECKERING and LETICA, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her six minor children under MCL 712A.19b(3)(b)(*ii*), (c)(*i*), (g), and (j). We affirm.

## I. FACTUAL BACKGROUND

This case arises out of physical and sexual abuse that the children from respondent's first marriage suffered at the hands of her second husband (Castilllo). Respondent and her first husband (Carcamo) had four children: JTC, JAC, JMC, and JJC. Carcamo, an illegal immigrant, was eventually deported and, while he was out of the country, respondent divorced him.[1] Meanwhile, respondent married Castillo, with whom she had three children: BPC, BCC, and BBC.

As aptly summarized by the trial court:

> All of the minor children were removed from Respondent-Mother's care on April 28, 2016. The original petition was authorized on April 29, 2016 and alleged that [Castillo] had sexually abused [JMC] and [JAC] and physically abused [JJC] and [JMC] by locking them in their rooms for hours, tying the children to cinderblocks in the basement, and putting the children on their knees while holding paint buckets on their heads. The allegations as to Respondent-

---

[1] Carcamo later reentered the country and settled in Tennessee.

-1-

Mother were that she was aware of the physical abuse but failed to protect the children, failed to enroll any of the children in school, and was homeless. As to [Carcamo] the allegation in the petition was that he had not had any contact with his children in 6 years, had no plan for the children, and had not provided any emotional support for the children.

On May 31, 2016, Respondent-Mother pled responsible to the allegations in the petition and the court took jurisdiction of the minor children. . . .

[Castillo] was convicted of four counts of first degree criminal sexual conduct in July 2016. [His] parental rights to his minor children were terminated . . . and he is no longer a respondent in this case. . . . [T]hree Carcamo [c]hildren have serious mental health issues as a result of the trauma they suffered at the hands of [Castillo]. At one point during these proceedings [JMC] was hospitalized for her psychological needs. . . . [T]hree Carcamo [c]hildren continue to participate in therapy to address the trauma they suffered.

After the trial court exercised jurisdiction and terminated Castillo's parental rights to his children with respondent, the permanency goal for all of the minor children remained reunification with respondent. A parent-agency treatment plan was implemented, and respondent received services, from which she initially seemed to benefit. Ultimately, at petitioner's discretion, the children were returned to respondent's care, subject to the continued jurisdiction of the trial court and the supervision and conditions imposed by petitioner. However, an incident took place during Memorial Day weekend of 2017, which caused the children's lawyer-guardian ad litem to file an emergency motion seeking the children's removal. As noted in one of the trial court's opinions and orders:

In the six weeks that the children were reunified with Respondent-Mother, she failed to get to two consecutive therapy appointments on time resulting in the sessions being cancelled. She kicked the caregiver out of the house prior to getting a new plan approved by [the Department of Health and Human Services (DHHS)]. She exposed the children to [Carcamo] during a secret overnight visitation knowing that [he] was not permitted to have in-person visitation with the children outside the presence of DHHS. In addition, despite the horrific abuse suffered by the children and the fact that she has always maintained that [Carcamo] was very violent during their marriage, she permitted him to have contact with the children without the supervision of DHHS. Also concerning is it appears that the Monroe visit was part of an agreement between Respondent-Mother and [Carcamo] wherein the Respondent[] agreed to let [Carcamo] visit the children twice per year in exchange for his continued mortgage payments.

When [Carcamo] hit Respondent-Mother in the head in the presence of the children, she took no action to remove the children from the situation or report the incident. Additionally, she admitted to allowing Joe, a homeless man with an assaultive criminal record to be around her children for hours at a time.

As a result of the foregoing, the trial court ordered the children's emergency removal.

On June 29, 2017, petitioner filed a supplemental petition seeking termination of the parental rights of both respondent and Carcamo. With regard to respondent, the allegations largely centered on her continued exposure of the children to abusive or potentially abusive men, as demonstrated by her recent decisions to expose the children to Joe and to Carcamo. Following statutory-basis proceedings, the trial court issued an opinion and order in December 2017 finding, with respect to respondent, that petitioner had established statutory grounds for termination under MCL 712A.19b(3)(b)(*ii*), (c)(*i*), (g), and (j) by clear and convincing evidence.[2]

A series of best-interest proceedings were held, ending in August 2018. After taking the matter under advisement, the trial court issued an opinion and order separately analyzing the best interests of all six[3] minor children and concluding that termination of respondent's parental rights would best serve the interests of each child. This appeal ensued.

## II. STATUTORY GROUNDS

Respondent first argues that the trial court clearly erred by finding statutory grounds for termination. We disagree.

We review for clear error the trial court's decision whether grounds for termination have been proven by clear and convincing evidence. *In re Medina*, 317 Mich App 219, 226; 894 NW2d 653 (2016). "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made," with the reviewing court "defer[ring] to the special ability of the trial court to judge the credibility of witnesses." *In re LaFrance Minors*, 306 Mich App 713, 723; 858 NW2d 143 (2014).

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). "Only one statutory ground need be established . . . , even if the court erroneously found sufficient evidence under other statutory grounds." *Id*. The clear and convincing evidence standard is "the most demanding standard applied in civil cases[.]" *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995). Evidence is clear and convincing if it

> produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without

---

[2] The court found no evidence that respondent had ever *personally* abused the minor children and, therefore, found that petitioner had failed to prove that termination was warranted under MCL 712A.19b(3)(b)(*i*).

[3] JTC reached adulthood during the pendency of this case and began college. Accordingly, the trial court terminated its jurisdiction over JTC without ever terminating respondent's parental rights to him.

hesitancy, of the truth of the precise facts in issue. [*Id*. (quotation marks and citation omitted; alterations in original).]

"Evidence may be uncontroverted, and yet not be clear and convincing." *Id*. (quotation marks and citation omitted). "Conversely, evidence may be clear and convincing despite the fact that it has been contradicted." *Id*. (quotation marks and citation omitted).

At the time the trial court issued its opinion and order addressing the statutory grounds for termination, MCL 712A.19b(3)(b)(*ii*), (c)(*i*), (g), and (j), permitted termination of parental rights under the following circumstances:

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

\* \* \*

(*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

\* \* \*

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.[4]

---

[4] MCL 712A.19b(3)(g) was amended by 2018 PA 58, effective June 12, 2018, and now provides for termination of parental rights where

[t]he parent, *although, in the court's discretion, financially able to do so*, fails to provide proper care or custody for the child and there is no reasonable expectation

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Initially, we note that respondent's statutory-grounds challenge fails to acknowledge or address the trial court's findings as to MCL 712A.19b(3)(b)(*ii*). Because only one statutory ground for termination of parental rights need be established, *In re Ellis*, 294 Mich App at 32, respondent's failure to challenge all four statutory grounds effectively renders this issue moot. See *In re Detmer/Beaudry*, 321 Mich App 49, 56; 910 NW2d 318 (2017) (explaining that an issue is moot when the reviewing court is unable to grant relief). Even if we were to construe respondent's general arguments as applicable to all four of the cited grounds for termination of her parental rights, we would find no clear error on the record before us.

MCL 712A.19b(3)(b)(*ii*) "is intended to address the parent who, while not the abuser, failed to protect the child from the other parent or nonparent adult who is an abuser." *In re LaFrance Minors*, 306 Mich App at 725. In particular, it applies to instances where the respondent parent failed to protect the child or children from physical abuse, sexual abuse, or excessive corporal punishment. *Id*. at 725-726.

In this case, it is undisputed that respondent failed to protect the children from her first marriage from severe physical and sexual abuse at the hands of Castillo. Indeed, respondent candidly admitted as much below, acknowledging that she continued to live with Castillo after she became aware that he was actively abusing several of her children. Under the doctrine of anticipatory neglect, "[h]ow a parent treats one child is certainly probative of how that parent may treat other children." *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001) (quotation marks and citation omitted; alteration in original). It is also undisputed that shortly after the children were placed back in respondent's custody, she intentionally exposed them to Carcamo, who had, according to respondent, been extremely abusive to her in the past. She also deliberately exposed her youngest children to "Joe," a man whom she had only recently met and whom she believed to have a criminal history involving a threat that he would kill one of his family members. Thus, we are neither definitely nor firmly convinced that the trial court made a mistake with regard to Subsection (3)(b)(*ii*). To the contrary, it seems evident that there was clear and convincing evidence both that respondent had failed to protect each child "or a sibling" from physical or sexual abuse and that there was a reasonable likelihood that the children would suffer injury or abuse in the foreseeable future if placed back in respondent's home.

With regard to Subsection (3)(c)(*i*), the trial court found that more than 182 days had elapsed since it entered the initial dispositional order and the conditions that led to adjudication—respondent's failure to protect her children from exposure to violent, abusive men—continued to exist. For essentially the same reasons discussed with regard to Subsection

that the parent will be able to provide proper care and custody within a reasonable time considering the child's age. [Emphasis added.]

(3)(b)(*ii*), we are not definitely and firmly convinced that the trial court made a mistake concerning Subsection (3)(c)(*i*).

The record also supports the trial court's findings with regard to Subsection (3)(g). A respondent's failure to benefit from services is evidence that he or she will be unable to provide proper care and custody in the future, *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014), and in this case, respondent's actions after her children were returned to her clearly demonstrated her failure to meaningfully benefit from therapy and domestic violence counseling. Also, she displayed a repeated willingness to place her own interests above those of her children, an inability to prudently consider the consequences of her actions before impetuously taking them (e.g., dismissing a caregiver before arranging a substitute caregiver for the children), and an inability to care for the minor children's special psychological needs. Moreover, respondent's longstanding pattern of behavior in those respects was ample evidence for the trial court to conclude that there was no reasonable expectation that respondent would be able to provide proper care and custody for the children within a reasonable time given their respective ages.

With regard to Subsection (3)(j), the trial court found that respondent has a history of selecting abusive partners and, despite participating in services, she continued to knowingly expose her children to men who have a history of violence. The court also found that respondent failed to properly attend to her children's psychological needs during the short period of time they were returned to her care. For purposes of Subsection (3)(j), the harm in question need not be physical; a "risk of *emotional* harm" can suffice. See *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). Moreover, "a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *In re White*, 303 Mich App at 711.

Respondent has a history of regularly exposing her children to both physical and emotional harm, and within a brief period of having them returned to her custody, she willingly exposed them to Carcamo, whom she knew to be physically abusive. Given respondent's continued pattern of behavior, we find no clear error in the trial court's determination that there was a reasonable likelihood, on the basis of respondent's conduct or capacity, that the children would suffer physical and psychological harm if they were returned to her custody.

III. BEST INTERESTS

Respondent also argues that the trial court clearly erred when it found that termination of her parental rights was in the best interests of each minor child. We detect no error.

We review the trial court's best-interest determination for clear error, *In re Medina*, 317 Mich App at 226, again "defer[ring] to the special ability of the trial court to judge the credibility of witnesses," *In re LaFrance Minors*, 306 Mich App at 723.

MCL 712A.19b(5) provides, "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." As explained in *In re Medina*, 317 Mich App at 237:

Although a reviewing court must remain cognizant that the fundamental liberty interest of natural parents in the care, custody, and management of their child[ren] does not evaporate simply because they have not been model parents or have lost temporary custody of their child[ren] to the State, at the best-interest stage, the child's interest in a normal family home is superior to any interest the parent has. Therefore, once a statutory ground for termination has been established by clear and convincing evidence, a preponderance of the evidence can establish that termination is in the best interests of the child. [Quotation marks and citations omitted; alterations in original.]

"In making its best-interest determination, the trial court may consider the whole record, including evidence introduced by any party." *Id.* (quotation marks and citation omitted).

[T]he court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (quotation marks and citations omitted).]

Additionally, the court may consider the best-interest factors that are utilized when making child custody decisions in divorce actions, as enumerated at MCL 722.23. *In re Medina*, 317 Mich App at 238.

We are not definitely and firmly convinced that the trial court made a mistake with regard to the best interests of the minor children. At the conclusion of the best-interest proceedings, respondent's financial circumstances had, if anything, greatly deteriorated over the course of the proceedings. Although she still had a partial ownership interest in the home where she had previously resided with the children, she acknowledged that she was unsure whether the mortgage payments were being made or whether foreclosure proceedings might have been ongoing. She conceded that she lacked proper housing for the minor children. Moreover, although she had applied for a new job, in her current employment she had been downgraded to a "substitute" position, where she was "not guaranteed any hours" and had not been working "very much" lately. Therefore, she admittedly lacked sufficient financial resources to support her children.

In addition, although the children shared a bond with respondent, there was evidence it was an unhealthy one. And while there was some evidence that respondent had made progress to remedy her various emotional and psychological problems, given her past history of failing to benefit from services—or, perhaps, to *retain* the benefit from them over any appreciable period—it is doubtful whether respondent would ever have been able to marshal the emotional resources necessary to provide for her minor children and their special psychological needs.

Contrastingly, the evidence established that in the event of termination, all of the minor children were placed in preadoptive homes where they were reportedly doing well, with some of

them truly thriving. And those preadoptive placements had clear advantages in terms of financial resources, stability, and the chance of permanency. Hence, we perceive no clear error with regard to the trial court's best-interest determinations.

Affirmed.


/s/ Colleen A. O'Brien
/s/ Jane M. Beckering
/s/ Anica Letica