*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* KNOBLAUCH/BALDWIN, Minors.

UNPUBLISHED
March 24, 2022

No. 357959
Ingham Circuit Court
Family Division
LC Nos. 18-001037-NA;
          19-000752-NA

Before: CAVANAGH, P.J., and MARKEY and SERVITTO, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order terminating her parental rights to the minor children, BK and MB, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood of harm to child if returned to parent).[1] We affirm.

## I. FACTS AND PROCEDURAL HISTORY

In August 2018, the Department of Health and Human Services (DHHS) filed a petition requesting that the trial court take jurisdiction over BK but also that it temporarily leave the child in the physical care and custody of her parents.[2] The petition included allegations of improper supervision of BK stemming from respondent-mother's emotional instability and drug use by respondent-mother and respondent-father. In particular, the petition alleged that respondent-mother attempted suicide in July 2018 by stabbing herself with a screwdriver and trying to drink bleach after voices in her head told her to commit suicide. Respondent-mother was hospitalized after this incident. The petition further alleged that respondents had been using and cooking methamphetamine at the time that respondent-mother heard voices and that BK was present during

---

[1] BK's father was also a respondent in this action, and his paternal rights to BK were similarly terminated. But he is not a party to this appeal.

[2] MB was born during these proceedings. Accordingly, the preliminary petition and hearings solely concerned BK.

their drug use. An amended petition was filed in late August 2018, which the trial court authorized. In September 2018, respondent-mother entered a plea of admission to the allegations in the amended petition, including the allegation that she had attempted suicide in July 2018.

The trial court regularly held dispositional hearings. And in late April 2019, the DHHS filed an emergency petition requesting that the trial court remove BK from respondents' care and place her in the custody of the DHHS. The petition alleged that respondent-father took respondent-mother and BK to a "drug house," where BK tried to grab needles and other drug paraphernalia used to ingest or inject controlled substances and where respondent-father used controlled substances. The trial court granted the emergency petition, placing BK in the care and custody of the DHHS, which moved her to a relative foster home.

MB was born in April 2019. Several days after MB's birth, the trial court issued an ex parte order placing MB in the care and custody of the DHHS because of concerns of improper supervision by respondent-mother in connection with BK's case. The DHHS then placed MB in a relative foster home.[3] In June 2019, respondent-mother entered a plea of admission to the contents of a petition regarding MB, including, once again, allegations that she had attempted to commit suicide in July 2018. The trial court issued two dispositional orders, one for each child, which required respondent-mother to undergo a psychological evaluation and follow the recommendations of that evaluation, participate in and benefit from therapy, communicate honestly with her therapist, complete and benefit from parenting classes, attend and participate in parenting time, refrain from using alcohol or illegal substances, attend random drug screens, seek and maintain legal employment, and obtain and maintain suitable housing.

Over the course of the next year, the trial court regularly conducted dispositional hearings. At a hearing in July 2020, respondent-mother's caseworkers testified that respondent-mother was not being honest with her therapist, that she was not benefiting from her mental health services, and that respondent-mother's supervision of her children was problematic. Accordingly, the DHHS petitioned for termination of respondent-mother's parental rights to BK and MB under MCL 712A.19b(3)(c)(*i*), (g), and (j), and the trial court authorized the petition. After several hearings, the DHHS filed a supplemental petition in January 2021, again requesting termination of respondent-mother's parental rights, which the trial court also authorized.

A six-day termination hearing was conducted between January and June 2021. Respondent-mother testified that all of the allegations in the amended supplemental petition for termination were true, except that she did not attempt suicide in July 2018. Respondent-mother indicated that after several therapy sessions with her first therapist, she realized that respondent-father made her believe things that were not true, including that she had attempted suicide while using methamphetamine. Respondent-mother also testified that when she admitted under oath in June 2019 that she had attempted suicide, she was "questioning" in her mind whether the incident

---

[3] MB and BK could not be placed in the same home because BK had been placed with a paternal relative, and respondent-father's paternity had not been established with respect to MB.

had in fact occurred and did not fully believe at the time of her plea that she had actually attempted suicide.

Two of respondent-mother's therapists testified at the termination hearing, opining that they did not believe respondent-mother was suicidal and that she did not have substance abuse problems. One of respondent-mother's therapists described her suicide attempt as a "one-time psychotic break due to the use of meth." Two of respondent-mother's caseworkers, however, testified that they did not believe respondent-mother had benefited from therapy because she was not honest with her therapists about the suicide attempt and because she had not spent enough time with each of the therapists to fully address her mental-health issues. Additionally, although respondent-mother had submitted to a majority of her random drug screens, she still missed about 50 of the 156 drug screens scheduled between April 2019 and August 2020, along with missing 14 out of 60 drug screens scheduled from August 2020 to June 2021. She also tested positive for THC on eight occasions in the period of August 2020 to March 2021. Furthermore, respondent-mother's caseworkers believed that she had not properly supervised her children. For example, they asserted that she had overfed her children, did not provide diapers, either did not want to change diapers or needed assistance changing diapers, and was unable to control her children in an outdoor park, which resulted in her children running into a parking lot unsupervised. Finally, respondent-mother's caseworkers acknowledged that she had obtained legal employment and suitable housing.

After the close of proofs, the trial court concluded that the DHHS had established grounds for termination of respondent-mother's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j). The court also determined that termination of respondent-mother's parental rights was in the children's best interests. Respondent-mother appeals by right.

## II. ANALYSIS

On appeal, respondent-mother argues that the trial court clearly erred by finding that the statutory grounds for termination were proven by clear and convincing evidence. Respondent-mother maintains that the court erred because the evidence demonstrated that she had substantially complied with the parent-agency agreement. Respondent-mother further contends that the trial court clearly erred by finding that termination of her parental rights was in the best interests of BK and MB.

In *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020), this Court set forth the following framework for appeals challenging the statutory grounds for termination and the best-interests determination:

> If a trial court finds that a single statutory ground for termination has been established by clear and convincing evidence and that it has been proved by a preponderance of the evidence that termination of parental rights is in the best interests of a child, the court is mandated to terminate a respondent's parental rights to that child. This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests. A finding is clearly erroneous if the reviewing court has a

definite and firm conviction that a mistake has been committed. When applying the clear error standard in parental termination cases, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it. [Quotation marks, citations, brackets, and ellipses omitted.]

The trial court terminated respondent-mother's parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j), which provide, in relevant part:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Termination of parental rights is proper under MCL 712A.19b(3)(c)(*i*) when "the totality of the evidence amply supports that [a parent] had not accomplished any meaningful change in the conditions" that led to the trial court taking jurisdiction. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009).

Respondent-mother argues that she rectified the conditions that brought the children into care by remaining drug-free, obtaining legal employment, securing suitable housing, and complying with her case service plan. In addition, respondent-mother contends that the trial court clearly erred when it concluded that respondent-mother did not benefit from her case service plan or acknowledge her suicidal history as revealed when she denied the suicide attempt merely on the basis of a statement made by respondent-father, who was not trustworthy. Respondent-mother also complains that the trial court failed to adequately consider the testimony of her two board-certified psychologists.

Under the trial court's orders and as mentioned earlier, respondent-mother was required to undergo a psychological evaluation and follow the recommendations of that evaluation, participate in and benefit from therapy, communicate honestly with her therapist, complete and benefit from parenting classes, attend and participate in parenting time, refrain from using alcohol or illegal substances, attend random drug screens, seek and maintain legal employment, and obtain and maintain suitable housing. Although respondent-mother completed a psychological evaluation, obtained legal employment, and secured suitable housing, she did not comply with her case service plan in several other respects. Respondent-mother admitted under oath on two occasions that the allegations in the BK and MB petitions were true, including that she had attempted suicide in July 2018. Respondent-mother saw several therapists after the trial court took jurisdiction over BK in 2018. Two of those therapists concluded that she did not require additional psychological assistance. In contrast, respondent-mother's caseworkers testified that over the almost two-year period that respondent-mother attended therapy, she had not been honest about her suicide attempt and mental health issues during the therapy; therefore, the caseworkers opined that respondent-mother had not benefitted from the mental health services.

We assume that the therapists were more versed in mental health issues, but the caseworkers had spent considerably more time working with respondent-mother over a two-year period. Giving regard to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it, we do not have a definite and firm conviction that the court made a mistake when it accepted the view and position of the caseworkers. Because respondent-mother's mental health problems were the main reason the children were brought into care, her failure to adequately address the problems during therapy and benefit from the services amounted to a failure to accomplish a meaningful change in the conditions that led to adjudication. See *In re Smith*, 324 Mich App 28, 39; 919 NW2d 427 (2018). As the trial court remarked, respondent-mother "can't benefit from any service when she does not recognize the circumstances that brought her into the situation."

Moreover, we agree with the trial court that respondent-mother's failure to consistently submit to drug screens reflected her failure to comply with her case service plan. She missed approximately 50 of the 156 drug screens scheduled between April 2019 and August 2020 and 14 out of 60 drug screens scheduled from August 2020 to June 2021. She also tested positive for THC on eight occasions in the period of August 2020 to March 2021. Further, although respondent-mother completed parenting classes, her caseworkers did not believe that she had benefited from those classes: During her visitations with the children, she did not demonstrate any of the skills taught during the parenting classes or her parent-coaching sessions.

Overall, from August 2018 to June 2021, there was sufficient evidence showing that the conditions that led to adjudication had continued to exist because respondent-mother had not benefited in any meaningful manner from the services that were provided to her. There was also adequate evidence demonstrating that there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering the children's ages. Accordingly, we are not left

with a definite and firm conviction that the trial court made a mistake by terminating respondent-mother's parental rights under MCL 712A.19b(3)(c)(*i*).[4]

With respect to respondent-mother's argument that the trial court clearly erred by ruling that termination of her parental rights was in the children's best interests, this Court in *In re Mota*, 334 Mich App at 321, observed:

> With respect to a child's best interests, we focus on the child rather than the parent. In assessing a child's best interests, a trial court may consider such factors as a child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. The trial court may also consider how long the child was in foster care or placed with relatives, along with the likelihood that the child could be returned to the parents' home within the foreseeable future, if at all. [Quotation marks, citations, and brackets omitted.]

In addition, a trial court may consider a parent's substance abuse problems and mental health history in its best-interests analysis. *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001).

In this case, the trial court found that although the children were bonded with respondent-mother, and she had obtained employment and housing, respondent-mother continually failed to recognize that she had mental health issues that needed to be addressed in order for her children to be safely returned to her care. The trial court concluded that respondent-mother's inability to provide permanency, stability, and finality for the children because of her unresolved mental health issues weighed heavily in favor of termination. The trial court also found that respondent-mother lacked the skills and insight to properly parent the children, which was reflected, in part, by her inability to manage the children during visits. The trial court additionally noted that BK had lived outside of respondent-mother's care for the majority of her life and that MB had lived outside of respondent-mother's care for the entirety of her life. Both of these factors weighed in favor of termination.

Respondent-mother contends that she had a strong bond with the children and that reunification would allow BK and MB to be raised together. As indicated above, a child's bond with a parent is only one of several factors that a trial court may consider in reaching its decision.

---

[4] In light of our conclusion that termination was appropriate under MCL 712A.19b(3)(c)(*i*), we need not address the additional statutory grounds cited by the trial court given that only one statutory ground must be proven. MCL 712A.19b(3); *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009). Nevertheless, we conclude, for the reasons stated by the trial court, that the court did not clearly err by terminating respondent-mother's parental rights under MCL 712A.19b(3)(g) and (j).

The trial court permissibly considered and weighed other factors more heavily, including respondent-mother's failure to comply with her case service plan and to adequately address her mental health issues. Given the length of the proceedings and respondent-mother's continuing shortcomings, termination provided the children with much-needed permanency, stability, and finality. We hold that the trial court did not clearly err when it found that termination of respondent-mother's parental rights was in the best interests of the children.

We affirm.

/s/ Mark J. Cavanagh
/s/ Jane E. Markey
/s/ Deborah A. Servitto