*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re LAFAVE/PARENT, Minors.

UNPUBLISHED
May 19, 2022

No. 358835
Dickinson Circuit Court
Family Division
LC No. 19-000510-NA

Before: LETICA, P.J., and MARKEY and O'BRIEN, JJ.

PER CURIAM.

Respondent-father appeals by right the trial court's order terminating his parental rights to his two children, CL and IP.[1] His parental rights were terminated pursuant to MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (g) (failure to provide proper care or custody), and (h) (parent is imprisoned for such a period of time that the child would be deprived of a normal home life for more than two years).[2] We affirm

CL was born in June of 2015, and IP was born in June of 2017. Respondent-father had an extensive history of substance abuse, and he testified that he had been incarcerated "four or five times" since CL's birth in 2015, including at the time of IP's birth in 2017. In October 2019, the children were removed from their parents' care after IP ingested a Suboxone pill belonging to her mother, resulting in the child's hospitalization. In early November 2019, respondent-father was arrested and incarcerated. He was later sentenced to terms of 4 to 30 years' imprisonment and 4 to 90 years' imprisonment for crimes involving the delivery of methamphetamine in a school zone and maintenance of a drug house. Respondent-father's earliest release date is November 2, 2023. He acknowledged that he had received three "tickets" for various infractions during his imprisonment. Some of respondent-father's visitation phone calls from prison to the children were deemed inappropriate because he would discuss the criminal case or the termination case with them. Respondent-father claimed that his phone calls to the children usually went well. He

---

[1] Respondent-father has a third child who lives in Wisconsin and is not involved in this case.

[2] The children's mother voluntarily released her parental rights and is not a party to this appeal.

testified that he would need to find a job and a place to live upon release. Also, respondent-father was delinquent in the payment of child support.

The children were placed with their maternal grandparents, but because of the grandparents' ages, they would not be able to provide a permanent or long-term home for the children. Additionally, respondent-father's half-sister in Wisconsin was prepared to adopt the children or to otherwise care for them. A home study through the state of Wisconsin was completed, and the half-sister's home was approved. A foster-care specialist who testified in this case opined that placement with the half-sister would "be a great placement for the[] children." Due to the limitations of imprisonment, it was not possible for respondent-father to engage in much of the case service plan, but he did complete worksheets pertaining to parenting skills and substance abuse that petitioner had provided. The foster-care specialist testified that respondent-father "had done pretty much everything I've asked [of] him." Unsurprisingly, respondent-father had negative drug screens while in prison. The trial court terminated his parental rights as indicated above. Respondent-father now appeals by right.

On appeal, respondent-father argues that the trial court clearly erred by finding that the statutory grounds for termination were proven by clear and convincing evidence where his early-release date affords him an opportunity to parent his children in 2023, and at which time there is a reasonable likelihood that the conditions leading to adjudication would be rectified. Respondent-father also contends that the trial court clearly erred by determining, under a preponderance-of-the-evidence standard, that termination of his parental rights was in the children's best interests.

In *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020), this Court recited the principles governing termination cases:

> If a trial court finds that a single statutory ground for termination has been established by clear and convincing evidence and that it has been proved by a preponderance of the evidence that termination of parental rights is in the best interests of a child, the court is mandated to terminate a respondent's parental rights to that child. This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests. A finding is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed. When applying the clear error standard in parental termination cases, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it. [Quotation marks, citations, brackets, and ellipses omitted.]

The trial court terminated respondent-father's parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (h), which provide:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

> * * *

-2-

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

(h) The parent is imprisoned for such a period that the child will be deprived of a normal home for a period exceeding 2 years, and the parent has not provided for the child's proper care and custody, and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

We first focus on MCL 712A.19b(3)(g). The trial court found that this ground had been established because although respondent-father had the financial ability to provide for the children, he failed to provide proper care or custody for the children due to his incarceration, his criminal record, and his history of substance abuse. The full extent of respondent-father's argument regarding § 19b(3)(g) is as follows:

[Respondent-father] provided for his children to the best of his ability after having been incarcerated. Termination based upon subsection (g) essentially punishes [respondent-father] for being indigent. If the court allowed his sister to take guardianship of the children while [respondent-father] continues to work toward his early parole date, he can provide proper care and custody within reasonable time given his children's ages.

There is no citation to supporting authority, and the argument is woefully undeveloped. See *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.") (quotation marks and citation omitted).

Although respondent-father does not provide any legal analysis, we shall briefly discuss parental-termination law relative to imprisoned parents. "The *mere present inability* to personally care for one's children as a result of incarceration does not constitute grounds for termination." *In re Mason*, 486 Mich 142, 160; 782 NW2d 747 (2010) (emphasis added). "An incarcerated parent *can* exercise the constitutional right to direct the care of his or her children while incarcerated . . . [by] choos[ing] who will care for his children while he is imprisoned." *In re Sanders*, 495 Mich

394, 420-421; 852 NW2d 524 (2014). An incarcerated parent "can achieve proper care and custody through placement of the child with a relative." *In re Baham*, 331 Mich App 737, 754; 954 NW2d 529 (2020) (quotation marks, citation, and brackets omitted).

We first note that respondent-father engages in pure speculation by suggesting that he will indeed receive an early parole date or that he will be released from prison within a reasonable time. By his own testimony, he has already received three prison infractions, and, in light of the 90-year maximum sentence, he may remain imprisoned for a considerable time. Moreover, the trial court did not rely solely on respondent-father's current state of imprisonment. Rather, on the issue of proper care and custody, the court additionally spoke of his extensive history of substance abuse[3] and his existing criminal record, which included "four or five" incarcerations since the birth of the oldest child. Respondent-father fails to address those aspects of the trial court's ruling. We conclude that the trial court did not clearly err by terminating respondent-father's parental rights to the children under MCL 712A.19b(3)(g).[4]

With respect to respondent-father's argument that the trial court clearly erred by ruling that termination of his parental rights was in the children's best interests, we note that this Court in *In re Mota*, 334 Mich App at 321, observed:

> With respect to a child's best interests, we focus on the child rather than the parent. In assessing a child's best interests, a trial court may consider such factors as a child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. The trial court may also consider how long the child was in foster care or placed with relatives, along with the likelihood that the child could be returned to the parents' home within the foreseeable future, if at all. [Quotation marks, citations, and brackets omitted.]

In addition, a trial court may consider a parent's substance abuse problems in its best-interests analysis. *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001).

---

[3] We give little weight to respondent-father's being drug-free while incarcerated.

[4] Although only one ground suffices for termination of parental rights, we also conclude that it is proper to affirm on the basis of the court's reliance on MCL 712A.19b(3)(h) given that respondent-father's argument is again inadequately briefed. The full extent of his argument is as follows:

> [Respondent-father] reached out to family to help assist [and] provide for his children's care and custody. In addition to the supportive efforts to care for the children by their paternal relatives, there is reasonable expectation that [respondent-father] will be paroled next year, enabling him to provide the children proper care and custody within a reasonable time.

The following is the full extent of respondent-father's argument on this issue:

> [Respondent-father] is committed to maintaining his sobriety and parenting the children in a fit manner. With family support, [respondent-father] will be capable of parenting his children independently and safely once released from prison. He submits that there is no need to destroy the bond between him and his children.

Respondent-father essentially makes conclusory assertions that are unsupported by the record. In ruling that termination was in the children's best interests, the trial court found that respondent-father will have been incarcerated for the majority of the children's lives if he is released in 2023, that the children needed to become established in a permanent home, that adoption would provide them with permanence, and that adoption by a family member would enable respondent-father to have some type of relationship with the children. Considering respondent-father's criminal history, his drug use, his current prison sentences, the need for him to find a job and housing even if released in the near future, the questionable phone visits, the children's positive well-being while in care, the likelihood of adoption by relatives, and the children's need for permanency, stability, and finality, which respondent-father has been unable to provide, we conclude that the trial court did not clearly err by finding that termination of respondent-father's parental rights was in the children's best interests.

We affirm.

/s/ Jane E. Markey
/s/ Colleen A. O'Brien