*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* D. L. SMITH, Minor.

UNPUBLISHED
May 15, 2026
9:28 AM

No. 376904
Wayne Circuit Court
Family Division
LC No. 2024-001635-NA

Before: KOROBKIN, P.J., and YOUNG and BAZZI, JJ.

YOUNG, J. (*concurring*).

I agree remand is necessary for a new hearing on whether termination is in the best interests of DLS. I also agree that this remedy is warranted because the trial court considered unproven, uninvestigated allegations that respondent molested a second child. I write separately to highlight three additional grounds for remanding for a new best-interest hearing.

First, DLS is presently placed with nonrespondent mother. That is mentioned throughout the best interest hearing transcript but without acknowledgement that a "placement with a relative weighs against termination . . . ." *In re Boshell/Shelton*, ___Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 371973); slip op at 10. This provides an independent reason to vacate and remand for a new hearing as "[a] trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with [a] relative[ ] renders the factual record inadequate to make a best-interest determination and requires reversal." *Id.*, quoting *In re Olive/Metts*, 297 Mich App at 43.

Second, the factual record also appears inadequate as to the parent-child bond factor. The trial court stated "[h]ow strong of a bond exists [between DLS and father], I don't have any testimony to tell me that. There's [] stronger . . .testimony as to the mother's bond with the child." The lack of *any* testimony as to the strength of the bond between DLS and father would be reason to do more factual inquiry rather than reach a legal conclusion to terminate. Further, it is not entirely clear that factual conclusion is accurate, as the record reflects DLS did continue to ask about his father when they were separated and recalled fondly getting candy from him. In exploring this bond further on remand, I would encourage the trial court to consider the reasons

-1-

for a weak bond between a child and parent that are probative of neglect of the individual child and support termination—i.e., unexcused failures to appear at visitations—and reasons for a weak bond that are less, or perhaps not, probative of neglect of the individual child—i.e., incarceration and parole conditions rendering visitation a factual and legal impossibility.

Finally, I question the manner the trial court employed the doctrine of anticipatory neglect. "[H]ow a parent treats one child is certainly probative of how that parent may treat other children." *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001). Here, petitioner argued that the criminal sexual conduct committed against one child "demonstrates a complete inability to make appropriate decisions regarding children in his care." The trial court agreed, finding that molesting one child in your household "tells me that his parenting ability is deficient." The court further concluded that because of "the instances of depravity on [respondent's] part," "no child, be it male or female, should be around him in the future because he is a threat to the harm of children, period." That may very well be an unobjectionable general premise to most, but it employs the doctrine of anticipatory neglect in a manner that is contrary to case law.

A best-interest hearing must be individualized to each child. See *In re LaFrance*, 306 Mich App 713; 858 NW2d 143 (2014). Specifically, as to applying anticipatory neglect, "the probative value of such an inference is decreased by differences between the children, such as age and medical conditions." *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020).

From direct and cross-examination of Department of Health and Human Services employee, Patricia Fields, the record establishes that DLS does not have special needs and is nearly ten years younger than victim-step-sibling, a teenage girl. Respondent provided financially and emotionally for DLS without concern. Field agreed that prior to the incident with victim-step-sibling, respondent was "with [DLS] 24/7 [and] there were no incidents at all." The record offers no evidence that respondent was likely to reoffend following his no contest plea and sentencing for his criminal offense, beyond the trial court's own speculation.[1] For this reason, too, I believe a new best-interest hearing is warranted. *In re LaFrance*, 306 Mich App at 732 ("Termination of parental rights requires 'both a failure and an inability to provide proper care and custody,' which in turn requires more than 'speculative opinions . . . regarding what might happen in the future.' ").

Because I agree a new best-interest hearing is warranted, I concur with the majority.

/s/ Adrienne N. Young

---

[1] The Michigan Supreme Court has acknowledged that the commission of a particular sex crime alone is not necessarily an accurate indicator of recidivism risk. See *People v Kardasz*, ___ Mich ___; ___ NW3d ___ (2025) (Docket No. 165008); slip op at 26 ("Sex-offender registries were initially premised on several assumptions, such as that all sex offenders are dangerous and highly likely to recidivate, that risk of recidivism could be linked solely to the offense of conviction, that risk of recidivism was static throughout an offender's life, and that registration provisions would be an effective means to reduce these high, lifetime risks. Based on the evidence we reviewed in deciding *Betts*, we concluded that that the efficacy of SORA as it existed at that time was 'unclear.' ").