*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. H. Williams, Minor.

UNPUBLISHED
June 9, 2022

No. 359075
Oakland Circuit Court
Family Division
LC No.   20-880188-NA

Before:  BOONSTRA, P.J., and GADOLA and HOOD, JJ.

PER CURIAM.

Respondent appeals by right the trial court's adjudication order, entered after a bench trial, finding statutory grounds to exercise jurisdiction over her minor child, AW.  We affirm.

## I.  PERTINENT FACTS AND PROCEDURAL HISTORY

Respondent is the mother of AW, who was born in 2021.[1]  Shortly after AW's birth, petitioner, the Department of Health and Human Services (DHHS or petitioner) filed a petition requesting that the trial court exercise jurisdiction over AW, who was living with her father.  The petition stated that respondent was the biological mother of three other children, DP, MA, and DM (collectively, "AW's siblings"), and that AW's siblings had been removed from respondent's care by DHHS in January 2020 after DP was seriously injured and hospitalized "without a plausible explanation."  The petition stated that AW's siblings were the subject of an ongoing child protective proceeding that had not yet been adjudicated and that respondent was receiving supervised parenting time.  The petition also alleged that respondent had "a substantial CPS [Children's Protective Services] history including five substantiated cases from 2015 to 2020 with allegations of physical abuse, physical neglect, improper supervision, and threatened harm.  In these previous cases, [respondent] demonstrated unwillingness to engage with CPS and participate in services."  The petition alleged that respondent had not rectified the conditions that led to the removal of AW's siblings.  Petitioner requested that the trial court exercise jurisdiction over AW and order that AW remain placed with her father.

---

[1] AW's legal father was not a respondent in the proceedings below and is not a party to this appeal.

After a preliminary hearing, the trial court authorized the petition, ordering that AW remain with her father and granting respondent supervised parenting time. A pretrial date was set for March 2021; this pretrial was subsequently adjourned until June 2021.

In March and April 2021, the trial court held an adjudication bench trial concerning AW's siblings. At the close of the trial, the trial court informed the parties that it would take the matter under advisement and would schedule a hearing to place its oral ruling on the record. In June 2021, the trial court entered an adjudication order taking jurisdiction over AW's siblings. The order stated that a hearing had been held on May 24, 2021 and referred to an "[o]ral ruling on the record" regarding the adjudication bench trial concerning AW's siblings; however, the record provided to this Court contains no transcript of that hearing.

The adjudication bench trial for AW was held over three days in June and July 2021. On the first day of trial, respondent noted that petitioner had not filed a witness or exhibit list as required by the pretrial order, and moved the trial court to dismiss the petition. Petitioner responded that the "main thrust of the current petition" was the circumstances that had led to the adjudication of AW's siblings, adding that the case had "the same case number, this is the same matter and I would be relying on the same witnesses." Petitioner requested that the trial court take judicial notice of the testimony of witnesses in the proceedings involving AW's siblings. The trial court requested that the parties brief the matter.

On June 22, 2021, the second day of trial, the trial court ruled on respondent's motion, declining to dismiss the case and holding that only witnesses who were listed on the prior witness list (for the bench trial regarding AW's siblings) could testify. The trial court barred two witnesses whom petitioner sought to have testify because they were not listed on the prior witness list. The trial court also stated that "the Court is not going to rely on the testimony and incorporate the testimony from the previous trial."

On July 27, 2021, the third day of trial, the trial court admitted, over respondent's objection, certified copies of DP's medical records. The medical records indicated that DP, age three at the time, had suffered a life-threatening neck wound from a kitchen knife while playing with her two siblings and a cousin; the children were under respondent's supervision at the time. Medical personnel also noted several healed scars on DP's body for which respondent could not provide an explanation. Respondent refused to allow medical providers to give Tylenol or a flu vaccination to DP while he was being treated for his injury.

Respondent testified that she had just finished taking a shower and was getting dressed in the living room when DP was injured in the kitchen, and that the injury occurred at her sister's home where the family was staying temporarily due to a gas leak in respondent's home. Respondent stated that her sister was asleep and her mother was "upstairs" at the time of the injury. Respondent testified that she had participated in parenting classes on a voluntary basis after AW's siblings were removed.

During cross-examination, petitioner asked respondent if she had been the subject of any prior CPS investigations or had any prior CPS cases. Respondent objected on relevance grounds. In response to the objection, the trial court rephrased petitioner's question to respondent, asking respondent whether any of her children had been removed from her care prior to DP's injury.

Respondent answered that they had not. Petitioner sought to make an offer of proof regarding respondent's prior CPS contacts; the trial court denied the request but stated that it would "take judicial notice of [respondent's] CPS history and that she has a CPS history and that her children had not been removed prior to January 2020." Respondent testified that she did not remember why she had been involved with CPS in the past, but that she had been offered, and had taken, parenting classes.

After the trial concluded, the trial court stated that it would take the matter under advisement and schedule a hearing at which it would place its oral ruling on the record. On August 11, 2011, the trial court held a hearing and placed on the record its determination that statutory grounds to exercise jurisdiction over AW had been established by a preponderance of the evidence. This appeal followed.

## II. JUDICIAL NOTICE

Respondent argues that the trial court abused its discretion by basing its adjudication decision on what respondent calls "a set of unidentified judicially noticed facts." We disagree with respondent's characterization of the trial court's rationale and conclude that there was no abuse of discretion.

We review for an abuse of discretion a trial court's decision to take judicial notice of facts not in the record. *Lenawee Co v Wagley*, 301 Mich App 134, 149; 836 NW2d 193 (2013). An abuse of discretion occurs when a trial court selects an outcome outside the range of reasonable and principled outcomes. *Id.*

The Michigan Rules of Evidence permit a trial court to take judicial notice of adjudicative facts in certain circumstances. MRE 201. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." MRE 201(b).

In this case, the only facts of which the trial court said it was taking judicial notice were "[respondent's] CPS history" and that respondent "has a CPS history and that her children had not been removed prior to January of 2020." While respondent argues that this description was "vague" and that the trial court "did not cite any particular source," we note that respondent herself testified to prior CPS contact and that her children had not been removed prior to January of 2020. Therefore, even though the trial court used the phrase "judicial notice," the fact that respondent had a CPS history and had not had her children removed prior to 2020 was not only established by the record in this case, but was undisputed by any party.

The trial court, in holding that statutory grounds for jurisdiction had been proven, stated that respondent had failed to benefit from services she had received in the past and had failed to rectify the conditions that had led to AW's siblings' removal. Contrary to respondent's argument, these statements were not based on unidentified or vague facts of which the trial court had taken judicial notice. Again, respondent herself testified that she had received services in the past, and the conditions that had led to AW's siblings' removal were the subject of substantial testimony and cross-examination in *these* proceedings. The trial court did not need to take judicial notice of

any specifics of respondent's CPS history to conclude that respondent had (1) been offered services in the past, (2) had failed to benefit from those services, and (3) had failed to rectify the conditions that had led to AW's siblings' removal. These issues were the subject of testimony, cross-examination, and the admission of evidence, including medical records. Respondent has not demonstrated that the trial court abused its discretion. *Lenawee Co*, 301 Mich App at 149.

## III.  ADJUDICATION

Respondent also argues that the trial court erred by determining that statutory grounds for exercising jurisdiction over AW had been proven by a preponderance of the evidence. We disagree. We review a trial court's adjudication decision for clear error in light of the court's findings of fact. *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004).

The adjudication phase of a child protective proceeding determines "whether the trial court can exercise jurisdiction over the child (and the respondents-parents) under MCL 712A.2(b) so that it can enter dispositional orders, including an order terminating parental rights." *In re Ferranti*, 504 Mich 1, 15; 934 NW2d 610 (2019). The trial court may exercise jurisdiction if the petitioner proves, by a preponderance of the evidence, the existence of one or more of the statutory grounds for jurisdiction alleged in the petition. *Id*.

The version of MCL 712A.2 in effect at the time of the trial court's adjudication stated, in relevant part, that a trial court has the following authority and jurisdiction:

(b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:

(1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. As used in this sub-subdivision:

(A) "Education" means learning based on an organized educational program that is appropriate, given the age, intelligence, ability, and psychological limitations of a juvenile, in the subject areas of reading, spelling, mathematics, science, history, civics, writing, and English grammar.

(B) "Neglect" means that term as defined in section 2 of the child abuse and neglect prevention act, 1982 PA 250, MCL 722.602.

(C) "Without proper custody or guardianship" does not mean a parent has placed the juvenile with another person who is legally responsible for the care and maintenance of the juvenile and who is able to and does provide the juvenile with proper care and maintenance.

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other

custodian, is an unfit place for the juvenile to live in. As used in this sub-subdivision, "neglect" means that term as defined in section 2 of the child abuse and neglect prevention act, 1982 PA 250, MCL 722.602. [MCL 712A.2(b), prior to amendment by 111 PA 2019 (effective October 1, 2021).]

"In cases with multiple children, the doctrine of anticipatory neglect may apply to confer jurisdiction." *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020). The doctrine of anticipatory neglect recognizes that how a parent treats one child is probative of how that parent may treat other children. *In re AH*, 245 Mich App 77, 84; 952 NW2d 544 (2001); *In re LaFrance*, 306 Mich App 713, 730; 858 N2d 143 (2014). "However, the probative value of such an inference is decreased by differences between the children, such as age and medical conditions." *Kellogg*, 331 Mich App at 259.

The petition in this case alleged in relevant part that respondent, "when able to do so, neglected or refused to provide proper or necessary support, education, medical, surgical, or other care necessary for the child(ren's) health" and that respondent's home or environment "by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of the parent . . . . is an unfit place for the child(ren) to live." The trial court found, under MCL 712A.2(b)(1), that "respondent mother is the biological mother when able [sic] to do so neglected to provide care necessary for the child's health and morals pursuant to the Anticipatory Neglect Doctrine." Regarding MCL 712A.2(b)(2), the trial court found that "respondent mother's neglect and depravity were rendered [sic] that a child's [sic] home an unfit place to live."

The trial court's findings were not clearly erroneous. The trial court heard evidence that respondent had left several young children unsupervised, with access to kitchen knives, despite the presence in the home of other adults who could have been asked to supervise the children. This lack of supervision resulted in a life-threatening injury to one of the children. Moreover, medical personnel found numerous healed scars on DP despite being only three years old; respondent had no explanation for how those injuries had occurred. Respondent herself testified that she had taken parenting classes in the past; yet this incident still occurred. Respondent testified that she did not even recall the *reason* for any of her prior CPS contacts; it is not unreasonable to conclude that she similarly failed to retain any of the lessons she may have learned from those prior encounters.

Respondent's treatment of DP was probative of how she would likely treat AW. *LaFrance*, 306 Mich App at 730. Although respondent argues that differences between the children preclude the application of the anticipatory neglect doctrine, it appears from the record that the only significant difference between the children is age. DP was three years old at the time of the injury, while AW was a newborn. While the differences between a newborn and a toddler are not insignificant, the record does show that respondent was willing to leave very young children unsupervised in a kitchen for a non-emergency reason (taking a shower) and without the presence of mind to ask other adults in the house to watch the children. Respondent displayed little insight into the extent to which her conduct was responsible for DP's injury. DP's medical records also showed other healed lacerations; respondent claimed not to know how the injuries that led to those

scars occurred. On this record, we are not convinced that the trial court clearly erred by exercising jurisdiction over AW on the basis of respondent's treatment of DP. *BZ*, 264 Mich App at 295.

Affirmed.

/s/ Mark T. Boonstra
/s/ Michael F. Gadola
/s/ Noah P. Hood