*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* HUBBARD/WILCOX, Minors.

UNPUBLISHED
January 19, 2023

No. 361771
Montcalm Circuit Court
Family Division
LC No. 2020-000972-NA

Before: RIORDAN, P.J., and MARKEY and REDFORD, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order terminating her parental rights to the minor children under MCL 712A.19b(3)(c) (failure to rectify conditions),[1] (g) (failure to provide proper care or custody), and (j) (reasonable likelihood that children will be harmed if returned to parent). We affirm.

## I. FACTUAL BACKGROUND

In November 2020, respondent was arrested for possession of methamphetamines. Following her release from jail, the Department of Health and Human Services (DHHS) received a complaint in December 2020 indicating that respondent was again using methamphetamines and unable to care for her children. The trial court ordered the children's removal so that respondent could focus on her recovery. The DHHS initiated services for respondent, including sober living, intensive outpatient therapy, a psychological evaluation, foster-care visitation support, trauma-informed-parenting classes, random drug screens, dialectical and cognitive behavioral therapy, individual counseling, domestic-violence support, and case management.

Although respondent initially complied with her case service plan, she gradually began to lapse in complying. In November 2021, the DHHS sought authorization of a petition to terminate

---

[1] Neither petitioner nor the trial court specified whether subparagraph (c)(*i*) (conditions of adjudication continue to exist), subparagraph (c)(*ii*) (failure to rectify other conditions), or both subparagraphs were the basis for termination. From the record, we find it clear that both subparagraphs (c)(*i*) and (c)(*ii*) were implicated.

respondent's parental rights after she tested positive for alcohol. The trial court declined to authorize the petition at the time because respondent was, for the most part, participating in services. In February 2022, the DHHS renewed its request for authorization of a petition to terminate respondent's parental rights after she tested positive for alcohol and marijuana use. This time the trial court agreed with the DHHS, authorizing the petition and ordering the initiation of proceedings to terminate respondent's parental rights. In June 2022, the trial court terminated respondent's parental rights to the children, concluding that statutory grounds existed to terminate her parental rights and that termination was in the children's best interests. Respondent now appeals.

## II. ANALYSIS

Respondent argues that the trial court clearly erred by finding that clear and convincing evidence was presented in support of the statutory grounds for termination and by finding that a preponderance of the evidence demonstrated that termination of respondent's parental rights was in the children's best interests. We note that respondent makes a broad argument in regard to the statutory grounds for termination, failing to link any particular assertion to a specific statutory ground. And the best-interests argument is cursory and lacks any recitation of authorities on the factors to consider in judging a child's best interests.

In *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020), this Court set forth the following framework with respect to appeals challenging the statutory grounds for termination and the best-interests determination:

> If a trial court finds that a single statutory ground for termination has been established by clear and convincing evidence and that it has been proved by a preponderance of the evidence that termination of parental rights is in the best interests of a child, the court is mandated to terminate a respondent's parental rights to that child. This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests. A finding is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed. When applying the clear error standard in parental termination cases, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it. [Quotation marks, citations, brackets, and ellipses omitted.]

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j), which authorize termination under the following circumstances:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

-2-

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

In the beginning of the protective proceedings, respondent complied with most aspects of her case service plan. At the first two review hearings, the trial court found that respondent complied with all but one requirement. But after a little less than a year, respondent began failing to satisfy some requirements—requirements that were designed to address the barriers to reunification such as emotional instability, mental health problems, domestic violence, substance abuse, inadequate parenting skills, and criminal behavior. At the third and fourth review hearings, the trial court found that respondent had failed to complete, and consequently benefit from, dialectical behavior therapy, cognitive behavioral therapy, and trauma-informed-parenting classes. These requirements were meant to address the issues regarding mental health, emotional stability, and parenting skills. Respondent participated in but failed to benefit from lessons offered to her. For example, she attended parenting classes to develop parenting skills, but at visitations she failed to embrace her role as an authority figure when discipline was appropriate and needed. Respondent also failed to interact with the children in a manner that prevented an increase in their dysregulated behaviors.

At the termination hearing, several witnesses—expert and lay—testified about respondent's mental health, emotional stability, and parenting skills. There was testimony concerning how respondent's diagnoses led her into unstable relationships, to chronically act impulsively, and to suffer feelings of fear and abandonment. Respondent's decisions to enter abusive relationships were extremely harmful to the children. One of her recognized disorders caused respondent to automatically place her needs above the needs of the children and to make choices solely on the basis of her own needs, causing her to neglect her responsibility as a parent. An expert opined that respondent did not possess the ability to provide structure and direction for the children. Although respondent made some progress, she did not progress enough to care for the children. An expert opined that respondent would need to recognize her issues and participate in constant and continuous therapy for at least two years before she could properly parent the children. The children became dysregulated after visits, and respondent did not have the parenting

skills to manage and control their conduct. Respondent's noncompliance with her case service plan prevented her from acquiring the skills necessary to address her trauma and her children's trauma.

Respondent argues that her participation in services showcased her ability to care for the children and their needs and, at the same time, manage her own progress. Respondent further contends that the doctors who testified lacked insight into her parenting skills because she had shown empathy toward the children and a dedication to her recovery. The trial court acknowledged respondent's progress. In fact, the trial court commended her progress and recognized that respondent had addressed her criminal behavior and the history of domestic violence. Nonetheless, the trial court stressed that despite respondent's attempts at addressing her other barriers, she would need considerably more time to completely confront and conquer the issues concerning mental health, emotional stability, and parenting skills. Respondent would need time to participate in the therapy recommendations and benefit from them. But the amount of time recommended by the medical professionals was not reasonable considering the children's ages and needs. If the children were returned to respondent's care, it was very likely they would suffer harm, either emotionally or psychologically, from the trauma caused by respondent's unstructured and unstable lifestyle, or suffer physical harm because of respondent's failure to identify and address the children's significant ongoing medical needs. And, as an expert opined, if another removal occurred because of respondent's inability to properly parent, the children's depression, dissociation, and anxiety would worsen. Also, the children's functioning would be interrupted because of their uncertainty about the future.

Contrary to respondent's argument, the trial court did not clearly err by finding that she failed to rectify the conditions of mental health, emotional stability, and parenting skills and that there was no reasonable likelihood that respondent would rectify them within a reasonable time. We conclude that under the totality of the evidence, the trial court did not clearly err by finding that termination of respondent's parental rights was proven by clear and convincing evidence under MCL 712A.19b(3)(c)(*ii*). Furthermore, we hold that the trial court did not clearly err by finding that respondent failed to accomplish any meaningful change in her substance abuse problems and that there was no reasonable likelihood that the substance abuse issues would be rectified within a reasonable time considering the children's ages. MCL 712A.19b(3)(c)(*i*). We also conclude that the trial court did not clearly err by finding that there was clear and convincing evidence supporting termination under MCL 712A.19b(3)(g) and (j).

Respondent finally argues that the trial court clearly erred by finding that the preponderance of the evidence demonstrated that termination of respondent's parental rights was in the children's best interests. Respondent contends that the trial court wrongfully dismissed the possibility that respondent could improve her parenting skills and abilities from continued participation in her services. With respect to the best-interest analysis, this Court in *In re Mota*, 334 Mich App at 321, observed:

> With respect to a child's best interests, we focus on the child rather than the parent. In assessing a child's best interests, a trial court may consider such factors as a child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic

violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. The trial court may also consider how long the child was in foster care or placed with relatives, along with the likelihood that the child could be returned to the parents' home within the foreseeable future, if at all. [Quotation marks, citations, and brackets omitted.]

In addition, a trial court may consider a parent's substance abuse problems in its best-interests analysis. *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001). "The trial court should weigh all the evidence available to determine [a child's] best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014).

The DHHS identified the following barriers to reunification: emotional instability, mental health issues, domestic violence, substance abuse, inadequate parenting skills, and criminal behavior. The trial court found that respondent completely addressed the domestic violence and criminal behavior issues but failed to completely address the other barriers. The trial court stressed that the experts, who had worked with respondent throughout this case, testified that respondent failed to accept responsibility for the children's trauma and minimized the consequences of her role in exposing the children to domestic violence, substance abuse, and significant neglect. Respondent also failed to care for the children's substantial medical and dental needs. The children participated, in varying degrees, in vision, speech, physical, and occupational therapy because their development was so stunted. The children's trauma negatively impacted their mental states and expressions of emotion. One child preferred to express high levels of anger and aggression because he internalized respondent's behavior. Another child lived in a state of constant fear and danger because he believed that respondent would not protect him. The last child lacked any emotional control because he shouldered too many losses and saw significant violence.

Respondent attended therapy and counseling to better her emotional stability and mental health, but she still needed at least two more years of sessions before she could identify the children's triggers and then parent them through episodes of dysregulated behavior. At this time, respondent is unable to address the children's behavioral issues and provide them permanency; consequently, the trial court correctly explained that any reunification could not be accomplished in the near future. In addition, the children were in the process of recovering from medical neglect, mental harm, and significant abuse. The medical professionals opined that respondent's inability to work through her trauma and handle her children's trauma would only further harm the children. In sum, we conclude that the children need stability and finality and that trial court did not clearly err by finding by a preponderance of the evidence that termination of respondent's parental rights was in the children's best interests.

We affirm.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ James Robert Redford