*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re HOLT/LUSTER, Minors.

UNPUBLISHED
January 18, 2024

No. 366774
Wayne Circuit Court
Family Division
LC No. 2023-000819-NA

Before: CAVANAGH, P.J., and RICK and PATEL, JJ.

PER CURIAM.

Respondent[1] appeals as of right the trial court's order after preliminary hearing authorizing the petition filed by the Department of Health and Human Services (DHHS) and removing her minor children, ACH, DEH, JKH, TMH, and LRL, from her care and custody. Respondent challenges the evidentiary support for the removal order and the sufficiency of the trial court's factual findings. Because there was sufficient evidence to warrant the children's removal and the trial court made the requisite findings justifying its decision, we affirm.

## I. BACKGROUND

Respondent has a history with Child Protective Services (CPS) dating back to 2008, involving instances of domestic violence and physical neglect. CPS offered respondent services and referrals for domestic violence counseling and parenting classes in 2009, but the services were not completed.

In March 2023, CPS received a complaint that respondent was physically abusing DEH and that DW, who is respondent's boyfriend and the father of JKH, was engaging in behavior that was perceived as grooming DEH for sexual abuse. During the CPS investigation, DEH disclosed that respondent physically abused her on several occasions, including an instance in February 2023 that left marks on her body. A subsequent medical examination revealed scarring on areas of DEH's body, which DEH attributed to respondent's physical abuse. DEH further contended that

---

[1] None of the minor children's fathers are parties to this appeal. Accordingly, any reference to respondent refers to respondent-mother.

respondent made disparaging statements to her. DEH also reported that DW's inappropriate behavior made her uncomfortable. DEH maintained that she did not feel safe in respondent's home. None of the other minor children advanced any allegations regarding physical, sexual, or emotional abuse against respondent or DW. But DEH reported that she saw respondent physically abuse ACH. Respondent adamantly denied all of the allegations.

On May 1, 2023, CPS requested that DW vacate the family residence as a part of the agency safety plan. Respondent and DW contended that DEH was lying and refused to cooperate. Thereafter, respondent sent text messages to DEH asserting that she wished DEH was dead and wanted her parental rights to DEH released. DW ultimately complied with CPS's request and left the family home.

On May 24, 2023 the DHHS filed a petition requesting that the trial court authorize the petition, exercise jurisdiction over the minor children pursuant to MCL 712A.2(b)(1) and/ or (2), make the children temporary wards of the court, order DW removed from the home, and order respondent to follow a treatment plan. The DHHS asserted that respondent's physical abuse of DEH and DW's "sexual grooming behaviors" were "investigated and confirmed." The DHHS contended that "[t]here is a reasonable likelihood that the children subject to this petition will be harmed if returned to the care of the parent/respondent . . . ." The DHHS further maintained that "[t]he abuse detailed in . . . this petition took place while the children was [sic] in the care and custody of [respondent], who failed to adequately protect the children from harm." The DHHS asserted that "[i]t is contrary to the welfare for the children to remain in [respondent's] care due to failure to protect from sexual abuse and physical abuse."

A referee conducted a preliminary hearing on May 26, 2023. Respondent was present at the hearing, waived a formal reading of the petition, and waived the probable cause determination. The referee found that there was probable cause that one or more of the allegation in the petition were true, there were sufficient grounds to authorize the petition, and it was contrary to the welfare of the minor children to remain under respondent's care and custody. The referee recommended the supervised placement of TMH and LRL with their father, in conjunction with the placement of ACH, DEH, and JKH in foster care or with relatives. The referee also recommended that respondent have supervised visitation, and that all contact between DW and the minor children, except his son JKH, be suspended. The trial court subsequently entered an order consistent with the referee's recommendations. This appeal followed.

## II. ANALYSIS

Respondent argues the trial court erred when it ordered the removal of ACH, DEH, JKH, TMH, and LRL from her care and custody because there was insufficient evidence to support that it was contrary to their welfare to remain in respondent's care and custody. We disagree.

In the context of removal of children from their parent's home, we review findings of fact for clear error. *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020). A finding is clearly erroneous when we are "left with a definite and firm conviction that a mistake has been made." *Id*. (cleaned up). "To be clearly erroneous, a decision must be more than maybe or probably wrong." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). We give "due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286,

296; 690 NW2d 505 (2005). And we defer to the trial court's credibility determinations and its weighing of evidence. *In re Ellis*, 294 Mich App at 33. We review de novo the interpretation and application of statutes and court rules. *In re Ferranti*, 504 Mich 1, 21; 934 NW2d 610 (2019).

At a preliminary hearing, a trial court "must decide whether to authorize the filing of the petition and, if authorized, whether the child should remain in the home, be returned home, or be placed in foster care pending trial." *In re McCarrick/Lamoreaux*, 307 Mich App 436, 448; 861 NW2d 303 (2014), quoting MCR 3.965(B)(12).[2] If the court authorizes the filing of the petition, it must then determine the child's placement. MCR 3.965(B)(12), (13), (C). The court may order a child placed in foster care if the following findings are made:

(a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.

(b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from risk as described in subrule (a).

(c) Continuing the child's residence in the home is contrary to the child's welfare.

(d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

(e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare. [MCR 3.965(C)(2); see also MCL 712A.13a(9).[3]]

To remove a child, a court "must make explicit findings that 'it is contrary to the welfare of the child to remain at home,' MCR 3.965(C)(3), and 'reasonable efforts to prevent the removal of the child have been made or that reasonable efforts to prevent removal are not required,' MCR 3.965(C)(4)." *In re Ferranti*, 504 Mich at 21. "A trial court is generally not obligated to articulate extensive findings regarding every conceivable detail." *In re Williams*, 333 Mich App 172, 183; 958 NW2d 629 (2020) (cleaned up). But "when a statute or court rule requires factual findings as to an enumerated list of factors, the trial court must make a record of its findings as to each and every factor sufficient for this Court to conduct a meaningful review." *Id*.

Respondent argues that the court erred when making its findings pursuant to MCR 3.965(C)(2)(a) because DEH was out of respondent's home at the time of the preliminary hearing, the DHHS did not request that the remaining children be removed from respondent's physical custody, and a voluntary safety plan was immediately implemented. Respondent's argument is unpersuasive. Although the DHHS requested that the court take jurisdiction over the children as

---

[2] Respondent does not challenge that there was probable cause to authorize the petition.

[3] MCL 712A.13a(9) is nearly identical to MCR 3.965(C)(2). There are no substantive differences, and the language in subdivisions (a) through (e) of both the statute and the court rule is indistinguishable.

"in-home wards," the lawyer-guardian ad litem requested removal of all of the children from respondent's care and custody, and expressed his shock that the agency had not yet filed a termination petition. The referee made specific factual findings on the record and recommended the children be removed from respondent. In the referee's oral declarations at the preliminary hearing and in the signed order adopting the referee's recommendations, the trial court explicitly found that: (1) the children's custody with respondent would place them at substantial risk of harm; (2) no reasonably available service would adequately safeguard the children from the risk of harm; (3) permitting the children's residence with respondent would be contrary to their welfare; (4) consistent with the circumstances, reasonable efforts to prevent removal were made; and (5) conditions of custody away from respondent were adequate to safeguard the children.

The referee found that it was contrary to the welfare of the children to remain in respondent's care and custody due to the underlying physical and emotional abuse allegations against respondent concerning DEH, in addition to respondent's failure to protect DEH after she disclosed DW's sexual abuse. We have recognized that a parent's treatment of one child is probative of how that parent may treat other children under the anticipatory neglect doctrine. *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001). Although none of the other children advanced any allegations regarding physical, sexual, or emotional abuse against respondent or DW, "[a]buse or neglect of the second child is not a prerequisite for jurisdiction of that child and application of the doctrine of anticipatory neglect." *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020) (cleaned up). Based on the respondent's treatment of DEH and her failure to protect her from DW's sexual abuse, the referee found that there was a substantial risk of harm to the children's health and safety under respondent's care and removal was the only reasonably available remedy to safeguard the children. The referee further found that the DHHS made reasonable efforts to prevent removal, including holding a team-decision meeting, contacting the legal fathers, implementing a safety plan removing DW from the home, providing Families First services and domestic violence counseling, and offering parenting classes.

The referee's findings, which were adopted by the trial court, were supported by the testimony of the CPS investigator, Chelsea Dozier-Giles, who described DEH's detailed disclosures in a forensic interview that respondent emotionally and physically abused her and DW sexually abused her. Dozier-Giles expressed that the DHHS was concerned about respondent's failure to protect her children after DEH reported DW's sexual abuse to respondent and respondent accused DEH of making up the allegations. The petition, which was signed by Dozier-Giles on behalf of the DHHS, asserted that "[i]t is contrary to the welfare for the children to remain in [respondent's] care due to failure to protect from sexual abuse and physical abuse." Dozier-Giles confirmed this statement at the preliminary hearing. We are not "left with a definite and firm conviction that a mistake has been made." *In re Benavides*, 334 Mich App at 167. Respondent has failed to establish any error during the removal proceedings warranting reversal.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Michelle M. Rick
/s/ Sima G. Patel

-4-